1815.
MAY.

Stevenson
vs
Howard

In an action of ejectment on the joint demise of H and J P, to the plaintiff, for a part of a tract of land and on separate demises by each of them, for an undivided moiety of such part, the death of J P was suggested after the issue was joined, and a verdict was rendered for the plaintiff for one undivided twelfth part of the tract, described by lines on the plots. A motion in arrest of judgment was overruled, and judgment entered on the verdict for the plaintiff.

The plaintiff in deducing his title to the land in question, gave in evidence a grant for the land in 1671 to T P and R B, and that T R was seized and possessed of the land, and died so seized in 1746, having by his will in 1744, devised the land in tail to his son F R. after his mother's death, F R in 1780, being in possession, conveyed the land to B G. who died intestate in 1800, leaving six children, one of whom conveyed all his interest to the lessor of the plaintiff Held, that the life estate set up to defeat the action, must, from the length of time that had elapsed (1746 to 1808,) be considered as having expired before the ejectment was brought, and that the plaintiff was entitled to recover.

STEVENSON vs. HOWARD, surv. of PENNINGTON's Lessee.

APPEAL from Baltimore County Court. This was an action of ejectment, brought on the 21st of September 1808, for part of a tract of land called Salisbury Plains, described by metes and bounds, on a joint demise for the whole of such part by J. E. Howard and J. Pennington, and on separate demises by each of them, for an undivided moiety of said part. The defendant, (now appellant,) took defence on warrant, and plots were made. The death of Pennington, one of the lessors of the plaintiff, was suggested after the issue was joined. At the trial the plaintiff gave in evidence a patent for Salisbury Plains, granted to Thomas Pert and Robert Benger on the 10th of July 1671, and that he had truly located the same on the plots in this cause. He also gave in evidence, that Thomas Rutter, (the first,) was seized and possessed of Salisbury Plains, and died so seized in 1746, having by his will, dated the 26th of September 1744, devised to his son Thomas Rutter, in tail, after his mother's death, all the remainder part of Salisbury Plains. He also gave in evidence, that Thomas Rutter, (the second,) the son of the said devisor, entered in possession of that part of Salisbury Plains devised to him by the said will; and so being possessed thereof did, on the 23d of February 1780, convey a part of his said part of Salisbury Plains to Benjamin Griffith, containing a lot of near four acres, &c. And also gave in evidence, that the location of the said deed, by the plaintiff on the plots, was correct. He further gave in evidence a deed from Ann Griffith, daughter of Benjamin Griffith, to John Eager Howard, one of the lessors of the plaintiff, dated the 2d of September 1801, for all her right, &c. in the same land conveyed to her father by Thomas Rutter. That Benjamin Griffith died intestate on or about the year 1800, leaving six legitimate children, who are now living, one of whom was the said Ann Griffith. He also gave in evidence a deed from John E. Howard, to Josias Pennington, the other lessor of the plaintiff, dated the 25th of November 1801, for one moiety or undivided half part of part of Salisbury Plains, stated to have been conveyed to the said Howard, by Thomas W. Griffith, on the 28th of October 1801, and which was conveyed to Benjamin Griffith by Thomas Rutter on the 23d of February

1780. The defendant then prayed the court for their direction to the jury, that the plaintiff had not made title to the land mentioned in the declaration, or any part thereof, so as to entitle him to recover. This direction and opinion the Court, [*Nicholson*, Ch. J. and *Hollingsworth*, A. J] refused to give The defendant excepted. Verdict for the plaintiff for one undivided twelfth part of all that part of *Salisbury Plains* which is included in the following lines:—Beginning, &c. The defendant moved the court in arrest of judgment, and assigned the following reasons: 1. That the jury were sworn to try the issue joined between *Jacob Goodtitle*, (who claims by a joint demise from *John E Howard* and *Josias Pennington*, for the whole land mentioned in the declaration,) and the defendant, and the verdict was for an undivided twelfth part of said land. 2. That the jury were sworn to try the issue joined between *Jacob Goodtitle*, (who claims under a several demise from *John E. Howard* and *Josias Pennington*, for one undivided moiety by each of them of the land mentioned in the declaration,) and the defendant, and there was a general verdict for an undivided twelfth part. 3. That the jury were sworn to try the issues between *Jacob Goodtitle*, (who claims under a joint and several demise from *John E. Howard* and *Josias Pennington*,) and the defendant. That the death of *Josias Pennington* was suggested, and admitted on the record, and there was a general verdict without specifying under what issue the jury found. 4. That the verdict was not sufficiently certain for the court to render a judgment upon it. 5. That there were various uncertainties and contradictions, by reason of which no judgment could be entered. The county court overruled the motion, and entered judgment on the verdict for the plaintiff, and the defendant appealed to this court.

The cause was argued before Chase, Ch. J. and Buchanan, Earle, Johnson, and Martin, J.

*Martin* and *Winder*, for the Appellant. 1. The verdict does not state on which of the counts in the declaration it was found; and as there were several counts, two of them on the demises of several lessors, the verdict not describing under which count it was found, was so uncertain that no judgment could be entered on it.

2. By the will of *T. Rutter* a life-estate was given to his wife, and there was no proof at the trial that she was dead, or that she had conveyed away her life-estate to the lessors of the plaintiff, or those under whom they claimed. In the devise to the son, after his mother's death, there is no description of what part of the tract was devised to him. The son could not convey such an estate as would enable the plaintiff to recover, as it shall be intended that the devisee for life was alive, unless the contrary is shown. 12 *Vin. Ab.* tit. *Evidence*, 124. a. b. 56. Nor was the deed from *T. W. Griffith* to *J. E. Howard*, recited in the one from *Howard* to *Pennington*, offered in evidence. *E. Griffith* having died intestate, leaving six children, his real estate descended to the whole of them under the act of 1786, ch. 45, and no one of the children had any right to the land, unless allotted to such child under that act. Whether an action of ejectment can be brought by any one of them, or by any person claiming under any such child, is a question not decided.

*Harper*, for the Appellee. 1. No other verdict could be given. But if it be erroneous, it is cured by the act of 1809, ch. 153, s 2, which provides, that if there is one good count to which the evidence will apply, and there is a general verdict, it is to be supposed the verdict meant to apply to that count.

2. The question respecting the devisee for life was not set up or thought of in the court below; if it had it could have been easily proved that she was dead. The devise was to her in 1744, when she was at least 25 years of age, having been married, and was the mother of four children, as appears by the will. If she had been living at the trial, she would have been upwards of 90 years of age. She must therefore, from the length of time, be presumed to be dead.

THE COURT *affirmed* the judgment of the County Court. On the second point raised, they said that the life-estate, set up to defeat the action, from the length of time that had elapsed before the suit was brought, must be considered as having expired before the ejectment was brought.

JUDGMENT AFFIRMED.