PHILEMON W. CHEW *vs*. PETER E. TOME ET AL.,
EXECUTORS, ETC.

*Vendor and Purchaser—Marketable Title—Presumption of Death From Absence—Failure to Prove Death Without Issue of Former Owner of Land—Will of Former Non-resident Owner Not Properly Probated.*

When a vendor at a mortgage sale offers a good record-title to the land a purchaser will not be required to accept and pay for the property unless the record-title is free from reasonable doubt.

Although the presumption is that a man who has been absent from the State, and unheard of by his family for more than seven years, is dead, yet there arises therefrom no presumption of law that he died without issue.

One whose claim of title of land as the heir at law of a former owner, depends upon the death of the latter without issue, must not only prove that person's death but also that he died without issue.

Upon exceptions to the validity of the record-title to certain land sold under a mortgage in this case, it appeared that in 1861 J. P. M. was the owner of it in fee. In 1878, G. M. executed a deed of trust conveying the land to secure the payment of a loan, and in 1879, the trustees named in the deed sold the property to a person from whom the vendor in this case derived title. The vendor alleged that J. P. M. had died intestate, unmarried and without issue, and that G. M. took the land as his heir at law. There was no direct evidence that J. P. M. was dead or that he died without issue, but the evidence was that in 1862, being then unmarried, he left the State of Maryland and entered the Confederate army, and that he had not been heard of by any member of his family since 1863. *Held*, that the title to the land is not free from reasonable doubt since the presumption of the death of J. P. M. cannot be made conclusive by an adjudication in this case so as to protect the purchaser, and there is no presumption that he died without issue arising from the fact that he was unmarried in 1862, and the issue of J. P. M., if any, might successfully maintain ejectment.

After the report of sale in the above-mentioned case, a paper purporting to be the last will of J. P. M., executed in 1861, was filed with the Register of Wills, by a relative who had found it among some family papers; the will undertaking to dispose of the land in question. *Held*,.

1st. That until the question of the validity *vel non* of this will be adjudicated by a competent tribunal, the vendor is unable to establish a good record-title.

2nd. That assuming the right of this Court now to construe the will, then G. R. M. would take under it the fee in the land only upon a certain contingency, and since there is no evidence in the case to prove the happening of that contingency, this constitutes another valid objection to the title offered.

The title to the said land also became vested at one time in one K., of the District of Columbia, who devised it to his wife for life with a power of sale annexed. K.'s wife conveyed the property to a person under whom the vendor in this case claims. The will of K. was admitted to probate by the Supreme Court of the District of Columbia, and a certified copy of the will and probate was recorded in the office of the Register of Wills for the county of this State where the land lies. The Supreme Court of the United States has held that the Supreme Court of the District had no authority to take probate of wills relating to real estate. *Held*, that since it is necessary that the source of the power of K.'s wife to convey should be a matter of record in this State, the void probate of K.'s will is a defect in the vendor's title, and this Court cannot in this case determine the effect of the curative Act of Congress of 1898, ch. 394, sec. 10, relating to the probate of Wills in the District of Columbia.

Appeal from an order of the Circuit Court for Prince George's County (MERRICK J.), overruling exceptions to a mortgage sale and finally ratifying the same. The will of J. P. Marshall filed as an exhibit by the exceptant is as follows :

"June 14th, 1861.

"In the name of the Father and of the Son and of the Holy Ghost, Amen. Being about to enter upon a perilous enterprise, one fraught with the greatest of dangers, wherein death may be encountered at any moment, and anxious to dispose of the earthly goods, with which God in his mercy hath blessed me, before entering upon the said enterprise—I, John P. Marshall, do hereby make, constitute, appoint and proclaim this to be my last will and testament.

" *Imprimis*, whenever the certainty of my death may be fully established which must rest upon undoubted and official report and unscrupulous investigation. I give and bequeath to my sister, Susan A. B. Marshall, to her and her heirs lawfully begotten in fee-simple, the landed estate left me by my late uncle, John M. Brown.

"*Item :* I give and bequeath to my sister, Susan A. B. Marshall, whatever of stock and farming utensils I may die possessed of, except a riding pony, which my brother, George R. W. Marshall, shall have the privilege of selecting from among the horses, furthermore, when the certainty of my death is established, I wish (Dennis), negro man to have his liberty together with one hundred dollars, to be paid him from the proceeds of the crops then on my place, if so much remain over after my first debts are paid, and in case there is not, this amount to be *retegivuly* furnished him by my sister, Susan A. B. Marshall.

" In case my sister, Susan A. B. Marshall, and my brother, George R. W. Marshall, to whom I wish the said bequest to fall if he should survive her, should die without legal issue, I give and bequeath to my cousin, William H. Marshall, to him and his heirs the above mentioned property, excepting the negro man (Dennis), whom I desire to be set at liberty at my death.

" Again I confide to kind care of my sister, Susan A. B. Marshall, my dog Neptune, unless his former mistress may wish to reclaim him. Whatever interest my father may intended for me in his property, I would wish left to my brother, George R. W. Marshall. My love abides with my father, my sister and brother ——— ——— my name I hope to leave on the scroll of the defenders of liberty and our Southern rights. My soul with its makers merciful hands. Of this my last will and testament, I appoint my cousin, William H. Marshall, and sister, Susan A. B. Marshall, sole executors, holding it as a great favor if the above mentioned cousin will so serve me. John P. Marshall, [Seal].

" Witnessed by—B. F. Gwynn, David Barry, Wm. H. Marshall.

" *Prince George's County, Sct :—*

" On this 21st day of January, 1899, came Fannie M. Marshall, of the District of Columbia, and made oath in due form of law, that she does not know of any will or codicil of John P. Marshall, late of Prince George's County, deceased, other than the above instrument of writing, and said will has been in her possession since about the 15th day of November, A. D. 1892, at which time she found the said will among the private papers of her late husband, William H. Marshall, deceased, who died the 11th day of November, A. D. 1892, and to the best of her knowledge and belief, the said William H. Marshall, deceased, had said will in his possession from the date it was executed, to the date of his, William H. Marshall, decease, and that said William H. Marshall received said will from the said testator, John P. Marshall, at the date of its execution. Said Fannie M. Marshall further made oath, that to the best of knowledge and belief, the three subscribing witnesses to said will, namely, B. F. Gwynn, David Barry and William H. Marshall, has since died.

"Sworn before Richard N. Ryon, Register of Wills for Prince George's Co."

The cause was argued before McSherry, C. J., Fowler, Briscoe, Page, Boyd, Pearce, Schmucker and Jones, JJ.

*F. Snowden Hill* and *Wm. M. Levin* (with whom was *Wm. F. Mattingly* on the brief), for the appellant.

*Fillmore Beall* and *C. L. Frailey* (with whom were *Jno. C. Heald*, and *P. E. Tome* on the brief), for the appellees.

JONES, J., delivered the opinion of the Court.

This is an appeal from the equity side of the Circuit Court for Prince George's County; and brings up for review the action of the Court in overruling exceptions filed to a sale made under certain proceedings in execution of a power of sale contained in a mortgage, and ratifying said sale.

The record shows that on the 23rd of August, 1898, by virtue of a power of sale contained in a mortgage from one Martha J. Wightman to Jacob Tome, dated the 16th of July, 1895, Peter E. Tome, the attorney named therein, sold at public sale the mortgaged property and reported Philemon W. Chew, the appellant in this case, as the purchaser thereof at the price of $7,000. Before the time limited in the order *nisi* for the ratification of the sale, the purchaser so reported filed his petition in the cause asking to be made a party thereto for the purpose of excepting to such ratification. Having been accordingly, by order of Court, made a party, he filed exceptions, stating as the grounds thereof that "the title to said property is not good;" that "the record-title to said property is not good; that "the title to said property is derived through a deed of trust from George R. W. Marshall to Erastus M. Chapin and Philip A. Darnielle, trustees, dated August 24th, 1878, and recorded among the land records of Prince George's County    *  .  *    and a sale thereunder by said trustees without their filing with the clerk of the Court in which said deed of trust was recorded a bond conditioned for the faithful performance of the trust by said deed reposed in said trustees;" that the bond mentioned in the exception just set out, given by the trustees therein named, was not "a bond with sureties;" and that large parts of the "said property remained unreleased of record from the opera-

tion of a deed of trust dated February 12th, 1892, and re-
corded among" the land records of the county.  Nothing fur-
ther appears in the record in regard to the ground of excep-
tion last mentioned and it therefore, requires no notice.

Alleged defect of title is the only ground of exception
urged by the purchaser, the appellant here, to the ratification
of the sale in question.  In passing upon these exceptions it
is not necessary for the Court to pass definitely upon the title
to the property involved in this controversy and pronounce
such title either good or bad ; but only to find whether it is
free from reasonable doubt, and not open to such question as
"ought to induce a prudent man to pause and hesitate" about
taking it.  This doctrine announced in the text-books and
supported by authorities, has been fully recognized and adopted
by this Court in the case of *Gill* v. *Wells*, 59 Md. 492.  The
clearness and force with which it was there expounded and
illustrated renders unnecessary here more than a reference to
that case.  We may make, however, as peculiarly apt here, a
quotation which there appears from the case of *Dobbs* v. *Nor-
cross*, 24 N. J. Eq., 327, in which it is said : "Every purchaser of
land has a right to demand a title which shall put him in all
reasonable security, and which shall protect him from anxiety,
lest annoying, if not successful, suits be brought against him,
and probably take from him or his representatives land upon
which money was invested.  He should have a title which
shall enable him not only to hold his land, but to hold it in
peace ; and if he wishes to sell it, to be reasonably sure that
no flaw or doubt will come up to disturb its marketable value."
In the case of *Gill* v. *Wells, supra*, the purchaser was defend-
ant in a suit for specific performance of a contract of sale of
land, but in reason and justice there can be no difference be-
tween the measure of protection which the Courts will afford
to a purchaser under such a contract, and one who comes be-
fore the Court in the circumstances in which the appellant here
comes.  As a further proposition bearing upon this case, and
one that needs only to be stated, a purchaser is entitled to get
what has been sold to him and what he has agreed to pur-

chase. Now the record here contains, in the place of testimony taken, an agreement as to the facts upon which arise the questions made by the exceptions which the purchaser has filed, and which are here being considered; and it appears therefrom "that a good record-title to the property in these proceedings mentioned was offered and sold." This was, therefore, one of the express terms upon which the appellant became the purchaser of the property in question; and without which, it is but reasonable to believe, he would not have purchased, or if at all, not at the price named in the report of sale. We will now examine the state of the title to which the appellant objects as it appears from the record.

The appellees have not offered, nor attempted to show, any other than a record-title to the property sold under the mortgage proceedings to the appellant. The record shows that the fee-simple title to the property in question prior to 1861 became vested in one John P. Marshall. The first thing that appears of record in reference to the property after John P. Marshall became so possessed of it is a deed of trust from one Geo. R. W. Marshall to Erastus M. Chapin and Philip A. Darnielle of the District of Columbia given to secure a loan to said Marshall from one Thomas Weaver, and authorizing the trustees named to sell the property in default of payment of the money loaned as in the said deed provided. This deed was dated 24th of August, 1878; and in June, 1879, the property embraced therein, a part of which was the property in question, was sold by the trustees by virtue of the powers vested in them by the deed. The sale so made was reported to and ratified by the Circuit Court for Prince George's County. Before proceeding to make this sale the trustees named in the deed of trust filed a bond, which was approved by the clerk of the Circuit Court, conditioned that the said trustees "shall well and truly keep and perform all and each of the covenants by him entered into in said contract" and signed by them with one surety.

The deed of trust made reference to the land here in question as being "the same lot of land of which John P. Marshall

died seized and possessed and which at his death descended to George R. W. Marshall." The grantor in the deed of trust, George R. W. Marshall, was a brother of the John P. Marshall to whom reference was made; and they had a sister, Susan A. B. Marshall, who died unmarried and without issue prior to the execution of this deed, leaving George R. W. Marshall her only heir at law and also the only heir at law of John P. Marshall if he died intestate, unmarried and without issue. The title to the property in question which the appellant would take upon the ratification of the sale under which he purchased in this case comes in a course of devolution from George R. W. Marshall and depends as a record-title upon the title that he had. To establish the title claimed by him as heir of John P. Marshall an essential fact to be known is that the latter died intestate and leaving no children. It appears from the record that the death of John P. Marshall is not a known or ascertained fact. It has not been made a matter of adjudication by any tribunal whose province it was to ascertain and adjudge it; and it is not established by any direct evidence. The only evidence to establish his death is the presumption that he is dead because of absence from the State for more than seven years without having been heard from. It is admitted that he left the State of Maryland about the year 1862, unmarried, and entered the Confederate army. Two witnesses, one a comrade in the Confederate army and the other the widow of a member of the Marshall family, testified that he "has not been heard of by any member of his family since 1863 and is generally thought to be dead."

The presumption relied upon as proof of the death is a presumption of law from the fact of absence, appearing from the testimony alluded to; *Schaub* v. *Griffin*, 84 Md. 557. But it arises from facts which had to be proved by witnesses having the requisite knowledge of them. There is nowhere any definitive conclusive judgment upon those facts so as to make them binding upon anybody. Nor can the presumption be adjudicated and rendered conclusive in this proceeding against any one not a party thereto. At best it is here only matter of evidence

affording *prima facie* proof of death. : If adjudged against the appellant the decision will bind him but it will not protect him. Such judgment would not bar John P. Marshall if alive, nor his children if he died leaving children from recovering the land. In the case of *Rowe* v. *Hasland*, 1 W. Black, 405, LORD MANSFIELD said, "that in cases of pedigree it is sufficient to show that a person has not been heard of for many years to put the opposite party on proof that he still exists. What is done on such a trial is no injury to the man or his issue if he should afterwards appear and claim the estate." *Alex. British Statutes*, 502; *Hubback's Evidence of Succession*, 177 (marg.) The last-mentioned author also refers to a case at page 178 (marg.) in which the Court gave judgment in ejectment for land, the title to which was in one Thomas Tannatt if he was alive; but who, it was proved, had not been heard of for fourteen years; but said, "if he were still alive he might recover the possession from the lessors of the plaintiff." Now, as has been seen, the title which the appellant agreed to purchase was "a good re-cord-title." A good record-title is conclusive against every-body. What the appellant is now offered is a *prima facie* title as the proof stands here.

. Further than this, assuming that the death of John P. Mar-shall is a fact, there is no legal presumption that he died with-out issue. This appears from the cases of *Hammond's Lessee* v. *Inloes*, 4 Md. 138, (see pages 174–75) and *Sprigg et al.* v. *Moale et al.*, 28 Md. 497. Both of these cases refer to and adopt the ruling in the case of *Richards* v. *Richards*, 15 East. 294, note (a) where it appeared: "In ejectment the lessor of the plaintiff claimed as heir by descent, and showed the death of his elder brothers but not that they died without issue. *Court*—This must likewise be proved. The plaintiff must re-move every possibility of title in another person before he can recover; no presumption being admitted against the person in possession." See also *Alex. Brit. Stat.*, 506. That John P. Marshall therefore died without issue can only be a pre-sumption of fact: The only fact in the record from which any such presumption could be made, is that about 1862 he was

unmarried.   With this single fact as evidence to negative the existence of issue, what assurance could the appellant feel, if he took the land in question, that, in view of the authority just cited as having been twice approved by this Court, he could successfully prosecute ejectment for it if circumstances should arise to make that necessary.   Would not considerations of this character be likely to affect the marketable value of the property in question and be calculated to raise doubts in the mind of an intending purchaser?   Would they not therefore be such as might well, in the language of this Court in the case of *Gill* v. *Wells*, *supra*, "induce a prudent man to pause and hesitate?"   And can they be regarded as mere "captious, frivolous and astute niceties?"

The record further shows, as affecting the title of George R. W. Marshall to the property in question, that since the report of the sale made under the proceedings in this case, a paper purporting to be the last will and testament of John P. Marshall has been filed in the office of the Register of Wills of Prince George's County, and the same is set out in the record. This is not to be treated as waste paper. It has been produced, as the record discloses, from a custody and under circumstances that entitle it to an adjudication by the proper tribunal upon the question as to whether it is or not the will of John P. Marshall; and if it be so found, to be then admitted to probate and established as such will.   It is the right of the parties, to whom its provisions apply, to have such action taken.   If it be found that John P. Marshall left a will, until we can look into this will we cannot determine what was George R. W. Marshall's title to the property in question.   It is sought to avoid the effect of this paper by saying that George R. W. Marshall will take under it the same estate that would descend to him as heir at law of John P. Marshall in the absence of a will.   This is invoking the principle that where the will gives to the devisee "the same estate in quantity and quality," which he would take as heir at law, he takes not under the will by purchase but by the worthier title as heir. *Donnelly* v. *Turner*, 60 Md. 81.   The one sufficien

answer to this is that the Court has no right to undertake to construe this paper as a will. The *factum* of the will must first be established by adjudication in the proper tribunal. When that has been done the parties who are interested in its provisions will have the right to have it construed if that be then necessary. Only then, and only when the parties in interest are before the Court in some appropriate proceeding, can the paper be construed as a will with any conclusive effect at all. This paper being entitled to be adjudicated as to the question whether it is, as it purports to be, the will of John P. Marshall, and not yet having been established as a will, is of itself sufficient to condemn the title here in question, upon the state of case disclosed in the record, as not being a "good record-title."

But though we are not authorized to undertake here a construction of the paper in question, suppose for the sake of the argument that we look into it with respect to the claim that George R. W. Marshall will take under it, if it be established as a will, the same estate in the property in question as he would take as heir to his brother. It will appear that as it reads, this claim manifestly cannot be sustained. It provides, if effect is to be given to it as it reads, for three successive fees contingent upon events that are named. It first gives and bequeaths to " Susan A. B. Marshall, to her and her heirs lawfully begotten in fee-simple " the land here in controversy. It then provides that " in case my sister, Susan A. B. Marshall, and my brother, George R. W. Marshall, to whom I wish the said bequest to fall if he should survive her, should die without legal issue, I give and bequeath to my cousin, William H. Marshall, to him and his heirs the above mentioned property." This paper therefore would seem to indicate that the design of the author of it was to give at most to George R. W. Marshall a fee contingent upon the death of his sister without legal issue ; then if he should die without legal issue to cut the estate given to him down to a life-estate ; and give the ultimate fee-simple interest to William H. Marshall. It does not appear from the record whether George R. W. Marshall is now

living ; nor whether he ever married ; nor whether he ever had children.   It is quite obvious, therefore that, if the paper in question is to be taken according to its apparent intention (and whether it is or not the Court now has no right to say), George R. W. Marshall will not take under it the same estate in quantity and quality that would descend to him as heir at law.   He would not take the fee at all except for the contingency of his sister having died without lawful issue ; and taking it upon that contingency, he of course would take it under the will if it be established ; and so take it subject to the contingency provided in the will by which it may be cut down to a life-estate.

It further appears from the record in the case here that the title to the property here in question became vested, in course of devolution, in one Joseph C. G. Kennedy, of the District of Columbia, who by his will devised it with other property to his wife, Catherine, "to be held for and during her natural life, with full power to sell, dispose of and convey any lot, lots, or parcels of ground here or elsewhere in fee-simple at any and all times when it shall appear necessary or proper to her maintenance to do so and she is to determine the times and manner of such conveyance."   In case of the decease of his wife the property was limited over to his daughter to occupy, as long as she remained unmarried, the relation to the property held by his wife with the same powers and privileges.   Then after the decease of wife and daughter and a son (to whom he had devised certain other property), so much of the property as should remain undisposed of "at and after the decease" of his wife was limited over.   The wife, Catherine, conveyed this property by deed to one Charles A. McCuen, from whom by mesne conveyances the title came to the testator of the appellees.   Catherine Kennedy had under the provisions of this will, as respects the fee-simple interest, only a power to convey.   *Benesch* v. *Clark*, 49 Md. 497.   Her deed had not only to pass her interest in the property, but it had to be such an execution of her power to convey as to exclude the interests of all others, who under the will of her husband would take

what she had not disposed of in execution of the power. It was vital therefore that not only her deed, but her source of power should be a matter of record in such a way as to be used effectively as proof of title. Now it appears this source of power, the will of her husband, Joseph C. G. Kennedy, was admitted to probate and record by the Supreme Court of the District of Columbia. It was never probated in Maryland, but a copy thereof certified according to Act of Congress, in the year 1887, with the probate proceedings was recorded in the office of the Register of Wills of Prince George's County. In the case of *Campbell* v. *Porter*, 162 U. S. 478, it was distinctly decided that the Supreme Court of the District of Columbia had no authority to take probate of wills relating to real estate and that such probate was void and of no effect, and the codicil to the will drawn in question and offered for probate in that case was excluded in so far as it related to real estate. There is no dispute here as to the scope and effect of that decision and it is needless to rehearse the facts at length.

From this decision it of necessity follows that the certified copy of the will and probate proceedings thereon, which was sent to and recorded in Prince George's County in 1887, could not then have been used as evidence in proof of title to real estate devised by the will. Here then was a clear defect in the record-title to the property here in question at that time. It is now argued that this defect is cured by Act of Congress 1898, chap. 394, sec. 10, which provides that "the record in the office of the Register of Wills for the District of Columbia of any will or codicil heretofore admitted to probate in the said District of Columbia and which shall not have been annulled or declared void according to law prior to the passage of this Act, shall be deemed and held at law and in equity, as of the same and like force and effect as if said will or codicil had been duly proved and admitted to probate and record under and in accordance with the provisions of this Act—and provided that this Act shall not apply to any proceedings at law or in equity pending at the date of the passage of this Act or commenced within one year thereafter

wherein the validity of such will or codicil shall be called in question." If we should undertake to construe and determine here the force and effect of this Act of Congress as respects the property here drawn in question, we would be dealing with matters which affect the rights of parties not before the Court. We therefore refrain from that undertaking. We shall only remark that it is not perceived how the Act in question can render valid and effective a paper recorded in this State, and which was recorded prior to the passage of the Act, and was without legal force or effect at the time it was recorded. We need only further say that we do not think that the appellant should be required to take as and for " a good record-title" one that is open to such question as is raised by the condition of the records in respect to the will of Joseph C. G. Kennedy, which constitutes so important a link in the chain of title upon which that sold in the proceedings in this case depends.

What has been said is sufficient to show that the sale made and reported in the proceedings in this case ought not to have been ratified and that the exceptions thereto ought to have been sustained. The order of the Court below ratifying the sale will therefore be reversed.

*Order reversed with costs to the appellant.*

(Decided March 14th, 1901.)