THE SAVINGS BANK OF BALTIMORE *vs.* HENRY
W. WEEKS, ADMINISTRATOR OF MARGARETTA
BEHRENS. .

*Administration Upon Estates of Absentees—Due Process of Law.*

The Act of 1896, ch. 246, authorizes the Orphans' Court to grant letters
testamentary or of administration upon the estates of persons who, by
their absence unheard of for above seven years, are supposed to be
dead, upon the petition of any person setting forth such absence and
that advertisement and inquiry had been made and no information as
to the absentee obtained. Then the Court is directed to order the pub-
lication of a notice warning such absentee to appear and if no appearance
be made, it is provided that the Court may, if it see fit, summon before
it relatives or friends of the absentee, and if no evidence shall be ob-
tained indicating the probable existence of such absentee, the Court
may judicially determine him to be dead and grant letters testamentary
or letters of administration upon his estate, which shall have the same
force and effect as if granted upon the estate of a person, proved by di-
rect testimony to be dead. The Act contains no provision requiring
that before distribution of the property of the absentee, security be
given that if he shall in fact be alive the distributees shall refund the
amounts received, nor does the Act make it essential that the Or-
phans' Court shall hear evidence concerning the absence of the party,
and the object of the Act is not the preservation of the absentee's prop-
erty, but its distribution. *Held*, that since the Act provides a method
by which a person's property may be transferred to others without trial
and without security for its restoration, the Act is void, because it is in
violation of Art. 23 of the Declaration of Rights of Maryland and of the
Fourteenth Amendment of the Federal Constitution, both of which de-
clare that no person shall be deprived of his property without due pro-
cess of law.

Appeal from the Orphans' Court of Baltimore City.

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*Joseph C. France* (with whom were *Geo. R. Willis* and *Jas. McEvoy, Jr.* on the brief), for the appellant.

*Edgar Allan Poe*, for the appellee, submitted the cause on brief.

BURKE, J., delivered the opinion of the Court.

The General Assembly of Maryland in the year 1896 passed an Act intended to repeal and re-enact section 230 of Art. 93 of the Code of 1888 relating to testamentary law, sub-title "Orphans' Court." The Act constitutes ch. 246 of the published laws of that session, and embraces sec. 234 of the Code of 1904. The provisions of the Act relating to the administration of the estates of persons supposed to be dead, because of absence from the State for a certain number of years, are the ones presented for consideration in this case. It is provided that: "The Court shall have full power to take probate of wills, grant letters testamentary and of administration, direct the conduct and settling of accounts of executors and administrators, superintend the distribution of estates of intestates, secure the rights of orphans and legatees, and to administer justice in all matters relative to the affairs of deceased persons; and also persons who by their uninterrupted absence, unheard of for above seven years, are supposed to be dead; provided, that when any will or codicil shall be presented for probate, or application shall be made for letters testamentary, or administration upon the estate of a person so absent and unheard of for above seven years, the person presenting such will or codicil, or making application for letters as aforesaid, shall file a written petition, under oath, setting forth the time when, and place where such absentee was last heard of by his family or friends, that diligent inquiry has been made among the family, relatives and friends of such absentee; and that advertisement and inquiry by letters or other-

wise has been made, at the most likely place of his last resi-
dence, and that no information, by any of these means, has
been obtained of such absentee since the date set forth in the
petition, which must be above seven years prior to the date of
the petition, and that the applicant verily believes such ab-
sentee to be dead, whereupon the Court shall order notice, by
publication, to be given in one or more newspapers, stating
that a will or codicil purporting to be the will or codicil of
such absentee, had been presented for probate, or that appli-
cation had been made for letters testamentary or of adminis-
tration upon the estate of such absentee, as the case may be,
and warning such absentee to appear on or before the day
fixed in such order, and show cause why the will or codicil
should not be probated, and letters testamentary granted
thereon, or letters of administration granted, if there be no
will; and such notice shall be published as the Court may di-
rect, not less however than once a week for four suc-
cessive weeks, fifteen days before the day fixed by such order,
for the appearance of the absentee; and that if no appearance
be made, *the Court may, if it see fit,* summon before it, and ex-
amine under oath, any relations or friends of such absentee,
respecting his absence, and if no information or evidence shall
be obtained indicating the probable existence of such absentee,
*the Court may judicially determine such absentee may be dead,*
and may proceed to probate the will or codicil in the usual
manner, and to grant letters testamentary thereon, or to grant
letters of administration, as the case may be, as upon the estate
of a deceased person; and such probate and such letters, either
testamentary or administration, when granted, *shall have the
same force and effect as if granted upon the estate of a person
proven by direct testimony to be dead.*" A radical change upon
the subject of testamentary law was attempted to be made by
this Act, as will appear by a comparison of its provisions with
sec. 230 of Art. 93 of the Code of 1888, which it purported to
repeal.

It appears that Margaretta Behrens, as evidenced by her
pass book, 341,077, had on deposit in the Savings Bank of

Baltimore the sum of $1,324.64, representing deposits made by her from time to time in said bank and the accrued interest thereon. On December 8th, 1905, Henry W. Weeks filed a petition in the Orphans' Court for Baltimore City, asking that letters of administration be granted upon the estate of the said Margaretta Behrens under the Act above quoted. The petition purported to be filed under and in conformity to its provisions. The bank, as custodian of the fund, intervened in the proceedings in the Orphans' Court, denied the power of the Court to grant letters of administration upon the estate of Mrs. Behrens, and prayed that the order *nisi* issued upon the petition of Weeks be rescinded. It was agreed that the intervening petition filed by the bank should be taken as and have the same force and effect as if the same had been filed as an answer to the petition of Henry W. Weeks.

The petition and answer of the bank were dismissed, and without a hearing, or the production of any evidence to support the allegations of the petition, the Orphans' Court adjudged "that Margaretta Behrens or Margtta Behrens is hereby judicially determined to be dead, and that letters of administration on the personal estate of Margaretta Behrens or Margtta Behrens be and are hereby granted to Henry W. Weeks, the said petitioner, and that he give bond in the penalty of two thousand dollars with the United States Fidelity and Guarantee Company as security." From this order the savings bank appealed.

By section 808 of the Act of 1898, ch, 123, it is provided that the Orphans' Court of Baltimore City "Shall order and direct the funds arising from intestates estates, that may be administered upon in said Court, and which remain undistributed for want of legal representatives of the intestates to claim the same, to be paid to the Board of School Commissioners." Henry W. Weeks, the petitioner, and to whom letters were granted, is neither a relative, nor creditor of Margaretta Behrens, and the obvious and admitted purpose of the proceeding is to turn her estate over to the School Board of Baltimore City.

The order of the Orphans' Court is objected to upon two grounds,

*First.* Because the petition of Henry W. Weeks does not comply with the requirements of the Act of 1896, ch. 246, and

*Secondly.* Because the Act is unconstitutional and void in that it contravenes both the 23rd Article of the Maryland Declaration of Rights, and the Fourteenth Amendment to the Federal Constitution.

We are of opinion that both objections are well taken, but as the proceeding can in no event be sustained, the defects in the petition will not be discussed. The decisions of the Supreme Court of the United States have established, as true the following propositions:

*First.* That under the general authority conferred by statute upon the Orphans' Courts of the various States to grant administration upon and to settle the estates of deceased persons, those Courts are not authorized to decide conclusively against a living person that he is dead.

*Secondly.* That all proceedings in such Courts, in the granting of administration under such general power, depend upon the fact of death, and are null and void if the person be in fact alive, whether such administration be granted upon a misapprehension of the fact of death, or upon the presumption of death arising from absence.

*Thirdly.* That it is within the power of the State to confer jurisdiction upon the Orphans' Court to administer upon the estates of absentees, even though they be alive, by special and appropriate proceedings applicable to that condition, and distinct from the general power to administer upon the estates of deceased persons. But such power must be exercised in harmony with, and in subordination to the Fourteenth Amendment to the National Constitution.

These propositions are supported by the cases of *Scott* v. *McNeal,* 154 U. S. 34, and *Cunnius* v. *Reading School District,* 198 U. S. 458. In *Scott* v. *McNeal, supra,* the Supreme Court of the United States declared that by the laws of Eng-

land and America, before the Declaration of Independence, and for almost a century afterwards, the absolute nullity of letters granted upon the estate of a person who was in fact alive at the time such letters were granted, was treated as beyond dispute.　After citing authorities in English Courts in support of this position the Court says : "In *Griffith* v. *Frazier*, 8 Cranch, 9, this Court, speaking by CHIEF JUSTICE MARSHALL, said: 'To give the Ordinary jurisdiction, a case in which by law, letters of administration may issue, must be brought before him.　In the common case of intestacy, it is clear that letters of administration must be granted to some person by the Ordinary; and though they should be granted to one not entitled by law, still the act is binding until annulled by competent authority ; because he had power to grant letters of administration in the case.　But suppose administration be granted on the estate of a person not really dead.　The act, all will admit, is totally void.　Yet the Ordinary must always inquire and decide whether the person, whose estate is to be committed to the care of others, be dead, or in life.　Yet the decision of the Ordinary that the person on whose estate he acts is dead. if the fact be otherwise, does not invest the person he may appoint with the care or powers of administrator. The case in truth was not one within his jurisdiction.　It was not one in which he had a right to deliberate.　It was not committed to him by the law.　And although one of the points occurs in all cases proper for this tribunal, yet that point cannot bring the subject within his jurisdiction.' "　A little later on in the course of the opinion, which was delivered by MR. JUSTICE GRAY it is said, "that the absolute nullity of administration granted upon the estate of a living person has been directly adjudicated or distinctly recognized in the Courts of many of the States."

The question which the Court was considering was the effect which should be given to a sale made by an administrator appointed by a Probate Court in the State of Washington under the general powers conferred by statute to administer upon and settle the affairs of deceased persons.　A petition

had been filed in the Probate Court of the county of Thurston, in the territory of Washington, alleging, "that Moses H. Scott heretofore a resident of the above-named county and territory, mysteriously disappeared sometime during the month of March, 1881, and more than seven years ago ; that careful inquiry had been made by relatives and friends of said Moses H. Scott, at different times since his said disappearance, has failed to give any trace or information of his whereabouts, or any evidence that he is still living ; and that your petitioner verily believes that said Moses H. Scott is dead, and has been dead from the time of his said disappearance." Notice was given, as required by law, of the filing of the petition, and appointing a day for the hearing. At the time appointed, and after the examination of witnesses, the Court passed the following order : "It duly appearing that said Moses H. Scott disappeared over seven years ago, and that since said time nothing has been heard, or known of him by his relatives and acquaintances, and that said relatives and acquaintances believe him to be dead, and that his surroundings, when last seen (about eight years ago), and the circumstances of that time, and immediately and shortly afterwards, were such as to give the relatives and acquaintances the belief that he was murdered at about that time ; and it appearing that he has an estate in this county. Now, therefore, the Court finding that the said Moses H. Scott is dead to all legal intents and purposes, having died on about March the 25th, 1888 ; and no objections having been filed or made to the said petition of Mary Scott, and the guardian *ad litem* of the minor heirs herein consenting, it is ordered that R. H. Milroy be appointed administrator of said estate, and that letters of guardianship issue to him upon his filing a good and sufficient bond in the sum of one thousand dollars."

Letters of administration were issued to Milroy, and he gave bond as directed. Under an order of the Court, Milroy as administrator sold certain land owned by Scott to Samuel C. Ward, who paid the purchase-price, and subsequently conveyed the land to John and Augustine McNeal. Scott was not dead,

and upon his return instituted a suit in ejectment in the Superior Court of Thurston County, in the State of Washington, against John and Augustine McNeal, purchasers from Ward, to recover possession of the land. The defendants relied upon the proceedings in the Probate Court in bar of the action. The Court held the proceedings valid, and directed a judgment for the defendants. This judgment was affirmed by the Supreme Court of the State. The case was then carried to the Supreme Court of the United States, upon writ of error, where the judgment was reversed.

In *Devlin* v. *Com.*, 101 Pa. St. 273, it is correctly said that, "the exact point decided in *Scott* v. *McNeal*, was that a sale made by the administrator under a State law of a person who had been absent, unheard of, for seven years, but who was in fact alive, passed no title to the innocent purchaser. The ground of the decision was that the Probate Court had no jurisdiction to appoint an administrator for a person who was alive, and there being no jurisdiction over the subject-matter, the appointment of administrator, and all acts done under such appointment was null and void."

It cannot be doubted that the rule declared in *Scott* v. *McNeal, supra*, would be applied by this Court under like circumstances, and when contrasted with the effect attempted to be given to a proceeding taken under the Act of 1896, ch. 246, the material change which that Act designed to effect in the rules of law becomes at once manifest. It provides a method by which the rebuttable presumption of death, which arises from absence of a person who has not been heard of for seven years, may be converted into conclusive evidence of death. This change is to be effected by conferring upon the Orphans' Court the power to judicially determine without a hearing, and without the examination of witnesses as to the fact, that the absentee is dead. By such determination the absentee is to be judiciously estopped to declare he is alive, or to assert his property rights. He is to be treated as a dead man, and must mutely submit to the settlement and distribution of his estate by the Orphans' Court as in the case of any other dead man.

It must be admitted that the State has the power, through the medium of an officer appointed in the mode prescribed by law, to take into his possession and control, for preservation, the estates of those who may have been absent for an unreasonable length of time, or that it may provide, under proper conditions and safeguards, to the rights of such absentees, for the administration and distribution of their estates, but it surely needs no citation of authority to show that a statute which confers upon a Court the power to declare an absentee to be dead, to make this decision conclusive against him, to so decide without inquiry as to the fact, and upon its determination that he is dead, to distribute his estate to his heirs, or to strangers, is an unreasonable and arbitrary exercise of power which the Courts ought not to permit. This is what the Act under consideration authorizes to be done, and is clearly null and void under the due process clause of the Fourteenth Amendment to the Constitution of the United States.

In *Cunnius* v. *Reading School District, supra,* the Supreme Court of the United States sustained an Act of the Legislature of Pennsylvania, under which the estate of a person presumed to be dead by reason of absence might be administered upon and distributed, but that decision rested upon the ground, that the duration of the absence, provided in the Act, was not unreasonable; that adequate notice was given, and that the Act contained ample provisions for the protection of the rights of the absentee should he be alive, and the Court indicated clearly that any statute which failed in either of these essential and necessary conditions would be held unconstitutional and void. The Maryland Act is wholly lacking in provisions for the protection and enforcement of the rights of the absentee, if alive. Its primary purpose, unlike the Pennsylvania statute, is not the conservation of the property, but its distribution. JUDGE DILLON, in his work on the Laws and Jurisprudence of England and America, 213, speaking of the Fourteenth Amendment to the Federal Constitution said: "It puts life, liberty and property, upon precisely the same footing of secu-

rity. It binds them each and all indissolubly together, it places each and all of these primordial rights under the aegis and protection of the National Government. By this provision they are each and all adopted as national rights. Under the Fifth Amendment they are each protected from invasion by Congress, or the Federal Government. By the Fourteenth Amendment they are each protected from invasion by State Legislature, or by the people of the States in any form in which they may attempt to exercise political power. If these rights are not safe and secure, it is because, and only because of the essential infirmity of constitutional limitations of the most peremptory character. This we cannot admit. The Fourteenth Amendment in the most impressive and solemn form places life, liberty, contracts and property, and also equality before the law, among the fundamental and indestructible rights of all the people of the United States."

The Act under consideration provides a special method by which the owner's title to property may be divested, and his property transferred to others without trial, and without security for its restoration, and is so unreasonable and violative of the absentee's rights that it cannot, under any principle of American law be sustained as a valid legislation.

No question as to the constitutionality of this Act was presented or passed upon in the case of *Lee* v. *Allen*, 100 Md. 7; nor is there anything in the case of *Schaub* v. *Griffin*, 84 Md. 557, in conflict with the conclusion we have reached.

> *Order reversed, and petition dismissed,*
> *with costs to the appellant above and*
> *below.*

(Decided June 16th, 1906.)