# FLORENCE F. ROBB *v.* ELEANORA ROBB HORSEY

ET AL.

[No. 12, October Term, 1935.]

228

*Decided November 4th, 1935.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Arthur R. Padgett,* for the appellant.

*Vernon Cook,* for Eleanora R. Horsey and others, appellees.

*Nathan R. Johnson,* submitting on brief, for the Estate of Wallace Robb, appellee.

OFFUTT, J., delivered the opinion of the Court.

Joseph Robb, Jr., of Baltimore City died in 1910, leaving a last will under which his residuary estate was left to the Safe Deposit & Trust Company of Baltimore in trust to pay the net income therefrom to his sister Elizabeth Robb for her life, and at her death to his brother Arthur Laning Robb for his life, and at his death to such persons as he might by his last will appoint. Upon the death of Elizabeth in 1915, Arthur Laning Robb became entitled to the possession of the life estate, and apparently received the income therefrom until 1919, when he disappeared and was not heard of until August 23, 1921, when his wife, Florence F. Robb, met him on the boardwalk at Atlantic City. Following that meeting

Robb signed a paper which was sworn to but not attested, which read as follows:

"This is to certify that I agree to let my wife Florence F. Robb draw the interest from the estate of my late brother Joseph Robb, Jr., in the hands of the Safe Deposit and Trust Co. of Baltimore, Md., Trustees, as it becomes regularly due. The above to become effective from this date August 23, 1921, and to draw back interest checks from March 10, 1919. In the event of my death I hereby bequeath the principal of this estate to my wife, Florence F. Robb.

> "Arthur L. Robb,
> "1517 Commonwealth Ave.,
> "Boston, Mass."

On August 26th, three days later, he executed, and his attorneys mailed from New York to the trustee, a power of attorney, authorizing Mrs. Robb to collect the income due him from the estate of Joseph Robb. The two papers were filed with the trustee, and it paid to Mrs. Robb $1,107.94 of accrued income, but for some reason not disclosed by the record refused to make further payments, "unless satisfactory proof should be adduced that the said Arthur Laning Robb was still alive," but did make one further payment of $404.79 upon the execution of a surety bond by Mrs. Robb to indemnify the trustee against possible loss resulting to it from the payment. Following the execution of the paper dated August 26th, 1921, Robb disappeared again, and has not been heard of since that time.

On April 18th, 1934, Mrs. Robb filed in the Circuit Court of Baltimore City against the Safe Deposit & Trust Company of Baltimore, trustee, her bill of complaint, in which she prayed that the trustee be required to account for and pay over to her the accumulated income from the Robb estate. On May 17th the trustee answered that bill, alleging that it was defective, in that it did not pray process against the next of kin of Joseph Robb, Jr., who had made demands upon the trustee, claiming that Arthur Laning Robb was dead without having exercised his

power of appointment and that the estate was distributable to them. On the same day the trust company, as trustee of the estate of Joseph Robb, Jr., and as executor of the will of Matilda Gill, a sister of Joseph Robb, Jr., filed a bill against Florence F. Robb, wife of Arthur Laning Robb, and all other persons having an interest in the trust estate, in which it prayed the court to assume jurisdiction of the estate, direct the distribution thereof, and in the meantime protect the trustee against the conflicting claims of the parties.

On October 18th, 1934, the two cases were consolidated, and after testimony and a hearing on October 27th, 1934, the court, by its decree of that date, assumed jurisdiction of the trust estate, directed the trustee to pay over to Florence F. Robb all net income of the estate accrued prior to August 27th, 1928, canceled the bond theretofore given by Florence F. Robb, and reserved all other questions affecting the distribution of the balance of the income and the corpus of the trust estate. After testimony and a hearing, it passed a final decree on February 18th, 1935, distributing the balance of the income and the corpus to such persons as would have been the distributees of Joseph Robb, Jr., at his death, and the personal representatives of those who had since died, upon the theory that Arthur Laning Robb had died without having exercised his power to dispose of the estate by a last will and testament. This appeal is from that decree.

The contention of the appellant is that the trial court erred in concluding and deciding from the facts before it that Arthur Laning Robb had died intestate, while the appellees assert the converse of that contention.

The single question in the case is whether the trial court was justified in concluding from the facts proved in the case that Arthur Laning Robb had died without disposing of the estate by last will and testament.

There was no direct evidence of the death of Arthur Laning Robb, but all the evidence related to the proof of facts affecting the application of the rule that the

long continued and unexplained absence of a person may permit the presumption that he is dead. The evidence is not conflicting, and the facts which it establishes may be stated indicatively.

In 1919 Robb and his wife were living in Washington, inferentially, together. On March 10th of that year he left his residence ostensibly "to go to business," but later in the morning of that day he telephoned his wife and told her that he had been called to Baltimore to see his sister Tillie, who was sick, and on the following day she received this letter from him:

"Dear Florence:

"You will be surprised at this letter. Conditions at the theatre have become unbearable and I am asking a change. I have decided today. I am leaving for Philadelphia and New York where I have good prospects.

"When I locate I'll send for you. Use the $720. My interest checks from Safe Deposit and Trust Company, South Street, Baltimore, will reach you. Endorse my name and under it yours as you will get the money all O. K. I am enclosing a power of attorney.

"There is no woman in this—only I'll go crazy if I stay in Washington.

"With all my love, I am, as always."

At that time he was manager for a theater in Washington, where a woman referred to by Mrs. Robb as Lenora Bouchard, Buchyard, or Bourchyard, was also employed. After she received that letter, Mrs. Robb neither saw nor heard from her husband until by chance she met him on the boardwalk in Atlantic City on August 23, 1921, nor, so far as the record discloses, was he seen or heard of by any other person during that period. When Mrs. Robb saw him in Atlantic City, he was accompanied by the Bouchard woman, and from that circumstance she inferred that when Robb disappeared in 1919, Miss Bouchard disappeared too, and that Robb "ran away" with her. When she met her husband in Atlantic City, Miss Bouchard ran away, not with, but from Mrs. Robb, and Robb seemed "too frightened to speak." As a result

of that meeting Robb and his wife at once went to a notary public's office, where he signed the paper dated August 23rd, 1921, and promised to send her an additional or supplementary power of attorney, which he subsequently did. After that interview Robb apparently went to New York, for he mailed the second power of attorney to Baltimore from there on August 26th, and also on August 27th a letter from him to John P. Horsey, an attorney at law, who was also his brother-in-law, in which he said in part: "Saw Florence at Atlantic City and promised to send her a properly executed power of attorney to collect various moneys from the Safe Deposit and Trust Company. Sent same to her today and also letter and power of attorney to Mr. Gibson of the trust company. Will you please look out for this matter and avoid any notoriety? Am making my headquarters in Boston. With an advertising company and make a goodly number of New England towns every month. The work is hard but I like it. I had quite a struggle—but will make good yet. No longer on Commonwealth Avenue and a brief personal in the Boston Transcript A. L. R. will be appreciated. Please send your personal to the Transcript early in the week. Give my love, if they'll accept it, to my sisters."

After the receipt of that letter nothing further was heard of Robb, and again he disappeared completely. A "personal" advertisement was inserted in the Boston Transcript as suggested by Robb, but he made no reply, mail sent to him at the address he gave in Boston was returned unopened, but no other serious attempt to locate him appears to have been made, at least by the trustee, until after this suit, when the trustee did make some inquiries as to the whereabouts of Robb and Lenora Bouchard, or Buchyard. This belated inquiry was also fruitless, and when this case was tried over thirteen years had passed since Robb had been seen or heard of to the knowledge of his wife or those of his relatives who testified in it. In 1921 a niece of Mrs. Robb, from whom Robb had borrowed $1,000, unsuccessfully em-

ployed a detective agency to locate him, and shortly after his disappearance Mrs. Robb reported it to the police, and also communicated with a sister of Lenora Bouchard in an effort to locate her, but received no information concerning either her husband or the Bouchard woman.

These facts must be considered in connection with the obvious inference that when Robb disappeared in 1919 he acted in furtherance of a fixed and deliberate purpose of concealing himself so effectually that neither his wife, his family, nor his friends or associates could discover his whereabouts. That purpose was briefly interrupted by the chance encounter with his wife at Atlantic City, but he used that meeting to deepen the mystery of his disappearance by misleading her as to his address, and after that it was complete.

Upon these facts the respective contentions of the parties resolve themselves into a choice of conflicting presumptions. On the one hand is the wife, who in support of her claim asserts that, since her husband was alive in 1921, it must be presumed, in the absence of proof of his death, or of reasonable diligence in attempting to find him, that he still lives. On the other are those who will take the estate if Robb died intestate, and they assert not only that, since Robb has been unheard of for more than seven years, that he must be presumed to be dead, but that it must also be presumed that he died without having exercised his power of appointment under the will of Joseph Robb, Jr.

The general rule undoubtedly is that one who has been continuously absent from his home for seven years, unheard of by those who would naturally and in ordinary course have received news of him if he were living, may be presumed to be dead. *Wigmore on Evidence*, sec. 2531; *Jones on Evidence*, secs. 61, 62; *Tilly v. Tilly*, 2 Bl. 444; *Stevenson v. Howard*, 3 H. & J. 554, 556; 19 Car. 2, cap. 6; *Alexander's Brit. Stat.* Coe's Ed. 679; *Doe v. Nepean*, 5 Barn & Adol. 86; *Shriver v. State*, 65 Md. 278, 287, 4 A. 679; *Schaub v. Griffin*, 84 Md. 557, 564, 36 A. 443; *Brotherhood of Locomotive Firemen & Engineers v.*

*Nash,* 144 Md. 623, 638, 125 A. 441; *Liquidation of George's Creek Coal & Iron Co.,* 125 Md. 595, 604, 94 A. 209; *Savings Bank v. Weeks,* 110 Md. 78, 92, 93, 72 A. 475; *Chew v. Tome,* 93 Md. 244, 251, 252, 48 A. 701.

The presumption is an arbitrary one, necessarily connected neither with reason nor logic, but founded upon a public policy which requires, as a matter of convenience, and indeed necessity, that important social and property rights shall not remain indefinitely in abeyance because of the impossibility of proving by real evidence the life or the death of a person upon whose life or death such rights depend. It extends only to the single fact of death, and may not be invoked to determine the time of death within the period, or whether the person died celibate or childless, *Wigmore on Evidence* 2531; *Sprigg v. Moale,* 28 Md. 497; *Kelso v. Stigar,* 75 Md. 376, 404, 24 A. 18; *Hammond's Lessee v. Inloes,* 4 Md. 138, 139; *Jones on Evidence* secs. 39, 40; 17 C. J. 1174, testate or intestate, *cf. Liquidation of George's Creek Coal & Iron Co., supra,* although in this state it may be presumed that death occurred immediately upon the expiration of the period of seven years. *Brotherhood of Locomotive Firemen & Engineers v. Nash, supra,* 144 Md. 623, 639, 125 A. 441; *Schaub v. Griffin, supra,* 84 Md. 557, 564, 36 A. 443. The practical effect of the rule is to determine when the burden of proof in establishing the life or death of a given person shifts. At first, ordinarily the burden of proving that a person, having been shown to be alive at a certain date, died afterwards, would be upon him who alleges the death, for ordinarily the presumption would be that he continued to live until the hypothesis of his continued existence would be inconsistent with the general knowledge and experience of men with respect to the duration of human life. But when it is shown that the person whose existence or nonexistence is in issue has disappeared and has not been heard of, by those who in the usual and natural course of events would probably hear from him if he were living, for the space of seven years, and his absence and silence are unex-

plained, a presumption arises that he is dead, and the burden shifts to those who assert that he is living. *Schaub v. Griffin, supra;* Jones on *Evidence, supra;* 8 R. C. L. 708, 709.

Mere absence is not sufficient to permit the application of the rule, but it must further appear that the absentee has not been heard of by his family or others who would likely hear from him (*Schaub v. Griffin, supra, Shriver v. State, supra*), and that there is no explanation of his silence, *Ibid.* By the great weight of authority it must also appear that reasonable diligence has been exercised to discover the absentee (17 *C. J.,* article *Death,* sec. 11), at least by seeking tidings of him from his family and relatives, and to that extent that requirement is recognized in *Shriver v. State, supra.* The presumption is rebuttable, and of course disappears when contradicted by positive evidence; it affords no protection to those acting upon it if the absentee subsequently appears, nor are those not parties to the litigation in which it is invoked bound by it. *Chew v. Tome,* 93 Md. 244, 250, 48 A. 701; *Savings Bank v. Weeks,* 103 Md. 601, 609, 64 A. 295; 19 Car. 2, cap. 6, sec. 5.

The presumption is compounded of law and fact (17 *C. J.* 1167), and does not arise where the circumstances of the case supply a rational, natural, and reasonable explanation of the continued absence and silence of the absentee consistent with his present existence. *Ibid.* It is indulged only because there is no other reasonable explanation of the disappearance. If there is such an explanation it does not arise.

Turning again to the facts, if it were not for the first disappearance of Robb, it would perhaps be consistent with the principles announced to hold that the rule should be applied; but when the circumstances of that disappearance are considered in connection with the circumstances surrounding his second disappearance, his absence is quite as consistent with a definite purpose of hiding himself from his wife and his relatives as with his death, and affords a reasonable explanation of his absence and

his silence. It is true that he was on good terms with his relatives, but he may well have felt that if his whereabouts were known to them, they might be known to their friends and eventually to his wife. The reasons for his course are not clear, but his intention to completely sever all connection between himself, his wife, and his relatives could not be clearer if he had said: "I am going away from the people who know me and the places where I am known, so that those who have known me will not see or hear of me again."

Until the chance meeting with his wife, his first disappearance was identical with the second, and then he took steps to insure that he should not be traced. He gave apparently a misleading address, he directed his brother-in-law to communicate with him by personal advertisement in a newspaper, and when he was seen in 1921 he was accompanied by a woman formerly employed with him, who ran away from his wife, and Robb was "too frightened to speak."

From those facts the inference is obvious that when Robb disappeared he was not heard of because he intended that he should not be heard of and for no other reason. Under those circumstances the search for him was too limited and incomplete to justify the presumption of death. For a time his relatives appear to have resented any attempts to locate him, and it was not until they had been sent for in 1929 by the trustee, that they seriously considered attempting to find him, and even then his sister Mrs. Horsey and her husband asked that the trustee postpone efforts to locate him for a year, and promised that in that time they themselves would attempt to find him. They did apparently make some inquiries, but the evidence as to them is too vague and scanty to show their nature or extent. The trustee wrote to the notary public and to Robb's attorneys in New York concerning him, to a Lucille Bouchyard in Washington, D. C., to the Veterans' Bureau, and to the police department in Washington concerning Leonora Bouchyard, but did nothing further.

In view of the time that had elapsed since Robb was last heard of and of the circumstances attending his disappearance, these sporadic and casual inquiries were not sufficient to support the presumption of his death, nor can such a presumption arise until a more systematic, careful, and exhaustive inquiry fails to account for his continued absence upon any theory except that of his death. *Bowden v. Henderson*, 2 Sm. & G. 360, 65 Eng. Rep. 436.

That conclusion is strengthened by the fact that chapter 287, Acts 1933, imposes upon the trustee in such a case as this the positive duty of making diligent search to ascertain whether the life tenant be living or dead. It has been suggested that that statute is not applicable to the facts of this case, but it appears from an examination of it that its only purpose was to furnish a trustee, desiring to distribute a trust estate where the life tenant had disappeared, a method of making such distribution, under which it would be protected against the claims of the life tenant, his personal representatives or assigns, and to that extent it is applicable to the facts of this case, although it might not afford protection against an appointee of Robb named in a last will and testament to take the remainder of the trust estate. See *Beckwith v. Bates*, 228 Mich. 400, 200 N. W. 151.

Code, art. 16, sec. 225, cited by the appellees as authority for their bill, applies only to cases where the duty of the trustee to distribute is clear, but he is in doubt as to the identity of those entitled to participate in the distribution, while here, if the trustee is under a duty to make distribution upon the theory that Robb died intestate, there is no doubt as to the identity of those entitled to take in remainder, but the doubt is whether the estate of the life tenant has been terminated by his death intestate, and therefore whether the trustee is under a present duty to distribute.

The trial court was dealing with a conflict of presumptions, one that since Robb was living in 1921, he is still living; the other, that since he has not been heard of

since 1921, he is dead. The first presumption persists until destroyed by real proof of death, or by the presumption that one who has been absent and unheard of continuously for seven years will in the absence of a sufficient explanation be presumed to be dead; for, as stated in *Jones on Evidence,* sec. 60: "When a person is shown to have been living at a given time the continuance of life will be presumed, until the contrary is proved or is to be inferred from the nature and circumstances of the case." *Wigmore on Evidence,* sec. 2531, note 1. There was no real proof of Robb's death, nor were the facts before the court sufficient to permit it to presume his death from the mere fact that he had been unheard of for more than seven years. The prayer of the appellant's bill should therefore have been granted and the trustee directed to pay to her the accrued and accruing income of the trust estate, until such time as it may appear from proper and sufficient real or presumptive evidence that Robb died without having exercised his power of appointment. The court properly assumed jurisdiction of the trust estate, and the trustee may make seasonable application to the court to close the trust estate either under the provisions of chapter 287 of the Acts of 1933, or, upon furnishing satisfactory proof, real or presumptive, of Robb's death with or without having exercised his power of its appointment, and of its present duty to distribute the estate, under Code, art 16, sec. 225.

It therefore becomes necessary to reverse so much of the decree of the learned chancellor as directs the distribution of the estate of Joseph Robb, Jr., to such persons as would have been the distributees of his estate at the date of his death, and to affirm so much thereof as deals with the payment of costs, counsel fees and taxes.

> *Decree reversed in part and affirmed in part, and cause remanded for further proceedings in accordance with the views expressed in this opinion; the costs of the appeal to be paid out of the estate.*