## Elizabeth Potter *vs.* The Prudential Insurance Company.

Third Judicial District, New Haven, June Term, 1928.

Wheeler, C. J., Maltbie, Hinman, Banks and Yeomans, Js.

Argued June 7th—decided July 27th, 1928.

*Andrew D. Dawson,* for the appellant (plaintiff).

*William B. Fitzgerald,* with whom, on the brief, was *Ulysses G. Church,* for the appellant (defendant).

WHEELER, C. J.   The plaintiff, the beneficiary under an insurance policy on the life of her first husband,

seeks to recover on the policy. From the judgment in favor of the plaintiff defendant appeals. The errors assigned upon the appeal of the defendant, aside from those relating to the correction of the finding, concern the holding of the trial court that the plaintiff had satisfactorily proven that the assured was dead, and had failed to meet the defendant's special defense, that the action upon the policy did not accrue within six years next before the commencement of this action, by establishing that the defendant had acknowledged the existence of the obligation on the policy within the six-years period. The correction of the finding in substantial accordance with the defendant's claims in a number of particulars should be allowed as follows:

Paragraph thirty-seven should be corrected by striking out "two and one-half years" and inserting "upwards of two years," and adding to the paragraph, "The defendant offered no evidence in support of its amended answer and special defense filed June 2, 1927, nearly six months after it had completed its 'careful investigation' of the disappearance of the insured."

Paragraph eleven should be corrected to read: The defendant insurance company endeavored to get information of the insured through the Knights of Pythias and American Mechanics of which the insured was a member. How extensive the investigation of these organizations was the evidence does not disclose. All that appeared in evidence was that the insurance company sought through them to ascertain whether the assured was living and at the request of the insurance company these organizations made inquiries of the relatives of the insured as to their knowledge of his whereabouts.

The plaintiff made no inquiries of these organizations as to the whereabouts of the insured or requested them to make an investigation as to this.

Paragraph thirteen should be corrected by striking

out, "of his friends," and inserting, "of a husband and wife who were his only intimate friends."

Paragraph fifteen should be corrected by striking out, "or business friends."

There should be added to the finding: Plaintiff made no inquiries of her husband's former fellow-employees in Waterbury with whom he had worked several years, or those in Derby and Jersey City with whom he had worked a few months. Nor did she make inquiry of the police department in Waterbury or Dayton, or of the board of health in Dayton.

Other corrections claimed are not of substantial merit. The case can, we think, be fairly disposed of upon the finding thus corrected without ordering a new trial on account of the corrections made.

When these corrections are made we have this case. Potter, the insured, lived on amicable and affectionate terms with his wife and with his parents. He had a boy two and one-half years old. He was a healthy, sober and industrious man of good habits, providing for his family as his means permitted, and having no financial troubles. He was a machinist by trade and could not get work. He saw an advertisement which represented that mechanics were needed in Dayton, Ohio. He determined to go there, and with $50 in pocket on August 3d, 1909, started for Dayton, Ohio, his wife parting with him at the train. He had promised to send her money when he got work. Upon his arrival in Dayton he sent her a postal giving address, Hotel Chrystal, 125th Street, Dayton, Ohio. This was the only communication she had from him and none of his near relatives have heard from him since. She wrote him a number of times between August 3d, 1909, and May 2d, 1910, but none of her letters were answered. On or about May 2d, 1910, she wrote him at the address given her on the card and requested that it be

advertised by the postmaster; it was returned to her unopened with indorsements on the envelope of various places where the post office authorities had attempted to locate Mr. Potter. Her husband had been in the Navy prior to his marriage; she tried to locate him through the Navy Department, but found that he had not enlisted in the Navy or in the Army. She inquired of the members of her husband's family and through his most intimate friends of his whereabouts. Upon her demand upon the defendant for the payment of the insurance, the company requested that she fill out a detailed disappearance questionnaire concerning the case. She furnished, at its request, all the information she had. The company replied that it was making inquiries and upon their completion promised to further inform the plaintiff. Three months later the company wrote that it had not yet quite completed its investigation and repeated this in a number of other letters extending over a further period of nearly two years and its last letter said it had made careful investigation of the case but had not obtained information warranting it in believing the death of the assured occurred prior to the expiration of the policy.

The defendant now complains of the inadequacy of the plaintiff's investigation. Her inquiry of the fraternal associations would have been fruitless. The defendant made such inquiry and offers no proof of the result of its efforts.

Defendant also complains because plaintiff failed to inquire of the police departments of Waterbury and Dayton or of the health department of Dayton. The failure of the defendant to offer proof of the results of its "careful investigation" justifies the inference that it developed no facts tending to indicate that the insured was still alive. These circumstances indicate how futile it would have been for the plaintiff to have

investigated at these sources, either prior to this action, or at the present time.

In its memorandum of decision the court held that the presumption of the death of William H. Potter arose under our statute as of June 10th, 1910, the time the letter of May 2d, 1910, was returned unopened to the plaintiff by the postmaster at Dayton, Ohio. It is evident the court was referring to General Statutes, §4976, which provides that "any person who shall have been absent from his home and unheard of for a period of seven or more years shall be presumed to be dead," for purposes of administration of his estate. There is a public interest involved in the administration of the estate of a deceased which is not involved in questions affecting the determination of actions upon his contracts. This statute was passed to meet this public interest. It does not have any large, much less conclusive, significance in determining the question whether this assured is to be now presumed to be dead. That is to be determined by the rule of our common law. The rule as generally stated is that a presumption of death arises from an unexplained absence of seven years. This is not a presumption of law signifying "that which may be assumed without proof, or taken for granted," and that which "is asserted as a self-evident result of human reason and experience" (*Ward* v. *Metropolitan Life Ins. Co.*, 66 Conn. 227, 238, 33 Atl. 902), but a rule of reasoning, as Professor Thayer states in his Preliminary Treatise on Evidence, pp. 319, *et seq.* It is an inference from the fact of the absence of seven years or more taken in connection with all the circumstances showing that, although diligent investigation has been made by the person seeking to prove the fact of death the fact of the absence remains "unexplained." The inference must reasonably follow from the fact of absence and

the circumstances of diligent investigation that death is the probable reason for the absence. The burden of proving that the absence is "unexplained" for this period is upon the person seeking to prove the fact of death, and unless diligent efforts have been made to find the absent one his absence cannot be held to be "unexplained." We have not heretofore had occasion to formulate this rule of reasoning. That which we have adopted is supported, we believe, by the larger number of the courts of this country and upon what we conceive to be the better reason. "He who relies upon an unexplained absence during seven years must prove it, and he must prove more than the mere fact of absence during that period. He must also produce evidence to justify the inference that death is the probable reason why nothing is known about the missing person." *Fuller* v. *New York Life Ins. Co.,* 199 Fed. 897, 898; *Modern Woodmen* v. *Gerdom,* 72 Kan. 391, 394, 82 Pac. 1100; *Policemen's Benevolent Asso.* v. *Ryce,* 213 Ill. 1, 17, 72 N. E. 764; *Doe d. France* v. *Andrews,* 15 Q. B. R. (N. S.) 756; *Matter of Wagener,* 143 N. Y. App. Div. 286, 287; 17 Corpus Juris, pp. 1167-1175.

We cannot hold under these circumstances that the conclusion of the trial court that the plaintiff at the time the insured left Waterbury and ever since has made diligent search and inquiry to locate him, is so unreasonable, in the light of the circumstances and facts found, as to be erroneous as a matter of law. It is, we think, an inference of fact, not unreasonably drawn. The character, disposition, habits and family relations of the assured, his condition of health, his freedom from debt, his capacity to earn a living, all tend to indicate that such a man would not, if living, permanently alienate himself from a happy home life, with a loved wife and young son. Nearly twenty years

have elapsed and he has not been heard from. The defendant has made careful investigation and cannot find him. The plaintiff has made some investigation and under the circumstances of this case a reasonable one. From all these facts, the unexplained absence for this long period of time, with the investigation made, leads fairly to the inference that the assured is dead, otherwise it is probable a man of the character and characteristics and relationships of the insured would long since have been in communication with and have returned to the wife and boy to whom he was attached.

We now take up the special defense of the statute of limitations. The policy provided for an extended insurance of the $2,000 policy for seven years and one hundred and ninety-eight days from May 7th, 1910, that is, the extension carried the policy to November 21st, 1917. Since the inference of the death of William H. Potter became conclusive on June 10th, 1917, as the trial court found, the right of action accrued within six years before the commencement of this action and the plaintiff has lost her remedy unless the defendant, within six years prior to the commencement of this action, has so acknowledged its liability to pay the insurance as to justify the inference of a promise to pay it.

On December 24th, 1924, the attorney for the plaintiff wrote the defendant that its actuary on June 10th, 1910, had informed her that the policy would be extended to November 21st, 1917, and recently that its insurance agent informed her that the defendant was liable to pay $2,000 on the policy since Mr. Potter, not having been heard of for seven years, was presumed to be dead, which presumed death took place during the continuance of the policy. The letter continued: "I . . . would appreciate it if you would forward to me the necessary proofs to be filed by Mrs.

Booth [the plaintiff] to obtain payment under this policy." The manager of defendant acknowledged receipt of this letter and advised, "the case is receiving attention." On January 7th, 1925, it further replied that the policy was paid up to May 7th, 1910, and that the extended insurance period under the policy expired November 21st, 1917, and that the policy was payable upon receipt of proof of death of the insured prior to the date of expiry of the extended insurance period. The company enclosed a form in a disappearance case covering inquiries which would when answered give a full history of the case and promised that upon receipt of this form, complete and sworn to, together with any letters or other evidence of any efforts made to locate the insured, the facts would then be given further consideration. The letter of the attorney must be construed as a demand for payment of the policy and a request for the necessary proofs of loss forms. The plaintiff's attorney on February 3d, 1925, forwarded the form properly filled in with a photograph of the insured, and the envelope addressed to the insured and showing that it was advertised in Dayton, May 16th, 1910, and renewed his demand for prompt payment. On February 11th, 1925, defendant returned the envelope and photograph and renewed its statement that the policy was payable for its full amount only upon receipt of proof of death. The attorney wrote the defendant nine other letters, renewing his demand and reiterating his client's legal position. To these letters the defendant made formal reply, saying it had not yet completed its investigation, and in its letter of November 16th, 1925, saying it had obtained little information that would lead it to believe that death had occurred, but that it expected to complete its investigation at an early date when it would further inform the attorney. The plaintiff

through new counsel on January 25th, 1927, wrote defendant she would bring suit to enforce payment of the amount due under the policy unless an adjustment of the claim was made within ten days. Defendant replied on February 2d, 1927, promising to write further concerning the matter in a few days. On February 10th, 1927, defendant wrote that "the evidence before us does not warrant the belief that his absence would raise the question of the presumption of death, and unless it can be proved that he died before November 21st, 1917, we cannot make payment."

Throughout the period of over two years, during which time repeated demands had been made upon it for the payment of this policy, the defendant at no time repudiated its liability under this policy, but made its promise of payment conditional only upon proof of the death of the assured prior to the date of expiry of the extended insurance. At no time did the defendant express its purpose to avail itself of the protection of the statute of limitations. When the demand was made it was the defendant's privilege to repudiate its liability on this policy. If it did not do so its silence would be evidential of the existence of the debt. It did acknowledge its liability, but it qualified its legal obligation which would have arisen from its acknowledgment by its conditional promise to pay. A general acknowledgment of an indebtedness is sufficient to remove the bar of the statute. The determination of whether a sufficient acknowledgment has been made depends upon proof that the defendant has by an express or implied recognition of the debt voluntarily renounced the protection of the statute. The receipt of a letter enclosing an account due and requesting information of one whether he found it correct, replied to by the debtor, that he regretted his inability to pay, is in law an implied recognition of the

debt. So a general acknowledgment may be inferred from acquiescence as well as from silence, as where the existence of the debt has been asserted in the debtor's presence and he did not contradict the assertion. *De Forest* v. *Hunt,* 8 Conn. 179, 184; *Lord* v. *Harvey,* 3 Conn. 370, 372. Whether the defendant had in this correspondence, irrespective of its conditional promise to pay, made in law an acknowledgment of this debt it is not necessary to determine. The acknowledgment does not itself revive the debt, but out of it the law raises or implies a promise to pay. The debtor may annex a qualification or condition to the acknowledgment and it becomes a conditional acknowledgment, or to the promise and it becomes a conditional promise. Necessarily the revival of the debt can only become effective when this condition has been fulfilled. When the condition upon which the acknowledgment was made has been fulfilled, the law will imply the promise and revive this debt. And when the condition upon which the promise was made has been fulfilled, the law will revive the debt. *Wetzell* v. *Bussard,* 24 U. S. (11 Wheat.) 309; *Weston* v. *Hodgkins,* 136 Mass. 326; *Mowbray* v. *Appleby,* 80 L. T. R. 805; *Hart* v. *Prendergast,* 14 M. & W. 741; 1 Wood on Limitations (4th Ed.) §77.

The correspondence between plaintiff and defendant to which we have referred discloses that the defendant did expressly promise to pay this policy but made its promise conditional upon proof of the death of the insured within the period of the extended insurance under the policy. The obligation under the policy was unenforceable because the action had not been brought within the six years subsequent to the death of the insured. It was optional with the company to attach the condition to its promise to pay which it did. It was obligatory upon the plaintiff to meet the condi-

tion imposed by the company. Until she had done this the debt under the policy would not be revived. When she had fulfilled this condition the law revived this debt from the date of the death of the insured. The company's obligation arose when the proof of the fact of death was made, and the proofs of loss made, which was on February 4th, 1925; the sending to the company of the questionnaire coupled with the failure of the company to request more was a practical compliance with the policy requirement for proofs of loss. The promise to pay, upon proof of death, was given within a period of less than two and one half years of the bringing of this action. The debt which was on June 10th, 1923, barred by statute was revived by the proof of the death made as of this date.

The plaintiff is entitled to recover $2,000 with interest from February 4th, 1925, the date when the proof of loss was made. The judgment first rendered on October 18th, 1927, was for $2,000 with interest from June 10th, 1910. Subsequently, on February 24th, 1928, the court reopened the judgment and rendered judgment for $2,000 with interest from June 10th, 1917. The court was then, as plaintiff claims on her appeal, without power to render this judgment at a later term than that at which the judgment of October 18th, 1927, was rendered,—the court having control over its judgments only during the term in which they are rendered, to correct judicial, in distinction from clerical, errors. General Statutes, §5524, as amended by Public Acts of 1927, Chap. 39; General Statutes, §5539, and Public Acts of 1927, Chap. 181, §6; *Hall* v. *Paine*, 47 Conn. 429; *Corbett* v. *Matz*, 72 Conn. 610, 613, 45 Atl. 494; *Goldreyer* v. *Cronan*, 76 Conn. 113, 115, 55 Atl. 594; *Brown* v. *Clark*, 81 Conn. 562, 567, 71 Atl. 727.

There is error upon both appeals. The judgment

bearing date February 24th, 1928, for $3,242, is set aside; the judgment bearing date October 18th, 1927, for $4,083, is set aside and the Court of Common Pleas in the Judicial District of Waterbury is directed to enter its judgment in favor of plaintiff as of October 18th, 1927, for $2,325.33 damages and her costs.

In this opinion HINMAN, BANKS and YEOMANS, Js., concurred.

MALTBIE, J. (dissenting). I trust the majority opinion will not be read as suggesting that the so-called presumption of death fixes the time of death as at the end of the seven-years period. Under the circumstances stated in the opinion the fact of death may be established, but, as I understand the law, not its date; that must be fixed by a further inference to be drawn from those circumstances or others in evidence. *Davie v. Briggs,* 97 U. S. 628, 634; *Hancock v. American Life Ins. Co.,* 62 Mo. 26, 30; *Nepean v. Doe d. Knight,* 2 M. & W. 893, 912; *In re Phene's Trust,* L. R. 5 Ch. App. 139; *In re Rhodes,* L. R. 36 Ch. Div. 586, 589. For that reason the presumption has little value as determining the right to recover upon an insurance policy running for a limited period. *Re Craufurd's Settlements Trust,* 2 T.L.R. 492. Nor can I read the correspondence between the attorneys for the plaintiff and the defendant as containing any *express* promise to pay the policy, even conditional, though one might well be implied from that correspondence. And I have considerable doubt whether the statute of limitations began to run from the death of the insured. The policy was by its terms payable "immediately upon acceptance of satisfactory proof of the death of the insured during the continuance of the policy." As no time for making such proof was designated, a

reasonable time would be implied, and the statute of limitations might well be deemed not to begin to run until the lapse of that time. *Spratley* v. *Mutual Benefit Life Ins. Co.*, 74 Ky. 443; and see 1 Wood on Limitations (4th Ed.) §119. But this question was not presented by counsel and perhaps may fairly be regarded as not in the case in view of the fact that the policy expired on November 21st, 1917, that no recovery could be had unless the death of the insured occurred on or before that date, and that the action was not begun until 1927. It is difficult for me, anyway, to see how the statute could be relied upon. The correspondence between the attorneys for the plaintiff and the defendant certainly had the effect of waiving the implied condition that proofs of death should be made within a reasonable time and extended the period for such proofs at least down to the final letter of the company, written February 10th, 1927. I agree that the answers to the questionnaire submitted by the company was all the proof of death which under the circumstances could reasonably be made, and that document was received by it in February, 1925. The cause of action could hardly be deemed to have accrued before that time.

My dissent from the conclusion reached in the majority opinion is upon the ground that, as I view the case, it cannot reasonably be held that any diligent search was made for the insured after his disappearance. The plaintiff last heard from him after his arrival in Dayton, in August, 1909, by means of a post card, which gave as his address a certain hotel there. Thereafter, until she began her attempt to recover upon the policy in December, 1924, all she did was to inquire of his relatives and her own, all of whom lived in Connecticut, and of one friend of the family, to write to the Navy Department to ask if he had enlisted, and,

in May, 1910, to write him at the address he had given her in Dayton, requesting that the letter, if unclaimed, be there advertised, which was done without result. All further inquiry made came after, and as a result of, her demand upon the company for the payment of the policy, which was made in December, 1924, fifteen years after the disappearance of the insured. Obviously the advertising of the letter in Dayton, without result, could mean at most only that the insured was not in Dayton in May, 1910. She neglected the natural and obvious step of writing to the hotel in Dayton which he had given as his address and to the factory where he had intended to seek employment, asking what was known of his stay there, and of seeking the services of the authorities of that city in attempting to locate him. It is quite possible that, had she done these things within a reasonable time, she would have received information which would have given a clew as to what became of him after he wrote the post card.