## JAN LACHOWICZ, Etc. *v.* ALVIN LECHOWICZ, ET AL.

### [No. 20, January Term, 1943.]

*Decided March 16, 1943.*

The cause was argued before SLOAN, DELAPLAINE, COLLINS, MARBURY, GRASON, and MELVIN, JJ.

*Adam S. Gregorious* for the appellant.

*William Curran,* with whom was *Paul B. Mules* on the brief, for the appellee.

MELVIN, J., delivered the opinion of the Court.

The proceedings in this case are based upon a petition by the Baltimore· National Bank, as administrator of the estate of Adolph Lechowicz, deceased, seeking the aid of the Orphans' Court of Baltimore City in ascertaining the person or persons entitled to the distribution of said estate. The procedure is that specially authorized for cases of this character by Section 151, Article 93 of the Code of Public General Laws of Maryland, 1939. There were two opposing claims before the court: one presented by the Polish Consul General on behalf of a brother of the decedent, who was last heard from in 1937 when he was residing in Poland; and the other presented by two cousins of the decedent, residents of Baltimore City, who likewise claimed the entire estate as the next of kin. From the order of the Orphans' Court (in which the Chief Judge who sat in the case did not concur), awarding the estate to the cousins, the Consul General has appealed.

A clear and concise statement of the case is set forth in the petition, and from it arise directly the specific issues to be decided here. They are: (1) Whether or not the claim of the absentee brother is properly before

the court through representation by the Consul General of Poland; and (2) whether or not the claim is supported by the presumption of continuance of life as to the said brother, under the facts and circumstances of this case.

It appears from the petition that the decedent, Adolph Lechowicz or Lachowicz, died August 25, 1941, intestate, unmarried, and a resident of Baltimore City, leaving an estate of approximately $30,000 accumulated from War Risk Insurance. Letters of administration were issued on September 2, 1941, to the Baltimore National Bank and preparatory for the time of distribution it conducted an investigation as to the next of kin of the decedent. This investigation, the petition states, disclosed that he had a brother, named John (Jan) Lachowicz, residing in a designated place in Poland, but who had not been heard from since 1937. Efforts to communicate with him proved unsuccessful, the petition continues, "due no doubt to the World War," so that the petitioner "is without knowledge as to whether the said John Lachowicz is now living, and if not, whether there are descendants surviving him who would be entitled to share in his estate." The decedent's only other relatives located by the administrator were the two appellees, who claimed to be first cousins, and who reside in Baltimore City, Maryland.

The petition then sums up in these words the reason for invoking this statutory procedure: "Your petitioner is advised that in view of the war now raging in England and Europe, as aforesaid, and the difficulty, if not the impossibility, of securing evidence legally sufficient to it for effecting proper distribution of the estate, it cannot with safety to itself, nor to the interests of those entitled to the estate, settle and distribute the estate without the aid of this Honorable Court."

On this petition the Orphans' Court passed an order naming a date for a meeting of those claiming as distributees, as prescribed by the statute, and specifically

ordering that notice be given to the three prospective claimants mentioned in the petition, namely, the brother in Poland, Jan Lachowicz (by publication) and the two cousins in Baltimore (by summons).

After several postponements this "distributees meeting" was held, finally, on September 22, 1942, at which time the Orphans' Court considered the claims and heard argument. At a prior meeting (May 15, 1942) the only claims represented were those of the cousins (appellees) who appeared in person and gave testimony. On June 13th, the Consul General of Poland appeared in the case, through counsel, and submitted a claim on behalf of the brother, Jan, as the decedent's sole "surviving distributee." This paper recited that the petitioner was taking this action under and by virtue of the Treaty of Friendship and Commerce between the United States of America and the Republic of Poland, which gave him the right and power to "represent his nationals in the distribution of estates of deceased persons." This was followed by a supplementary petition and claim by the Polish Consul General on behalf of the said brother, Jan, on June 23rd, in which the court was asked to reopen the case "for the purpose of taking your petitioner's claim, as originally presented, under consideration."

At the final hearing on September 22nd, the court did take this claim under consideration, along with the opposing claim of the two cousins, and in so doing expressly recognized the right of representation asserted on behalf of the brother. The ground on which his claim was disallowed in the order appealed from goes no further than the statement that the cousins "are entitled as next of kin or otherwise to the distribution of the said estate."

Just what the court meant by the words "or otherwise" is not clear. If it was referring to the point made in argument on this appeal, but which was not based on any objection made below so far as the record shows, that the absentee brother is not a "Polish national," the point is not well taken, for all of the facts and circum-

stances of this case support the assumption that this brother is a Polish national and negative the contrary assumption. Moreover, the testimony offered by the appellees, themselves, to support their claim of kinship indicates that all of these parties are natives of Poland and includes a statement that the brother, Jan, returned "home" to Poland to work on his father's farm to take the place of a deceased brother, Florian, only two or three years after he (Jan) had emigrated to this country during his boyhood. When last heard from in 1937 he was still there and with his status apparently unchanged. That he has remained a Polish national is the only reasonable inference to draw from the undisputed facts here, and consequently he is entitled to have his claim as distributee submitted through his Consul General, as expressly authorized by the treaty aforesaid. There was no other way possible, under the circumstances, by which his claim could have been presented for consideration, and to have it ignored altogether in making distribution of this decedent's estate would have been a manifest violation of the Orphans' Court's duty to "administer justice in all matters relating to the affairs of deceased persons." Code, 1939, Art. 93, Sec. 243.

The brother's claim, therefore, having been properly before the court, the next, and controlling, question on this appeal is whether or not the final order rejecting it in favor of the claim of the two cousins is correct.

The only theory on which the court below could have ruled as it did was that the brother, Jan, had died prior to the death of the decedent, Adolph, and, also, that he left no children to take his share. This involves a choice of conflicting presumptions as to the death of the claimant, Jan, but no choice at all for the court as to whether or not he died childless. This latter point is settled in Maryland by the case of *Robb v. Horsey,* 169 Md. 227, 235, 181 A. 348, 351, where in an opinion by Judge Offutt the court says: "It (the presumption of death) extends only to the single fact of death, and may not be

invoked to determine the time of death within the period or whether the person died celibate or childless." Supporting authorities are: *Wigmore on Evidence*, 3rd Ed., 2531; *Sprigg v. Moale*, 28 Md. 497, 92 *Am. Dec.* 698; *Kelso v. Stigar*, 75 Md. 376, 404, 24 A. 18; 25 *C. J. S., Death*, Sec. 6, p. 1056; *Lemire v. National Life Ass'n*, 194 Iowa 1245, 191 N. W. 67; *Hammond's Lessee v. Inloes*, 4 Md. 138; *Peterkin's Lessee v. Inloes*, 4 Md. 175.

Therefore, even if the claimant brother, who was last heard from in Poland in 1937, could be presumed to be dead in 1941, there would still be no support in law for the Orphans Court order excluding this claim entirely and awarding the estate forthwith to the cousins. There is no legal presumption, so far as potential descendants are concerned, that could be invoked to take the place of proof in eliminating them altogether from these proceedings at this time.

However, the case of *Robb v. Horsey, supra*, goes still further to the root of the issue now before us by pointing to the necessary choice of presumptions under a state of facts such as exists here. The appellees contend that the presumption of law is against the continuance of life of the brother, Jan, at the time of the death of the decedent, and that in the absence of affirmative proof of this the Orphans' Court was justified in rejecting the brother's claim. The appellant contends, on the other hand, that the presumption here is in favor of the continuance of life of the brother in question, and that the presumption of death does not apply in this case because the circumstances furnish an obvious and reasonable explanation of the continued absence and silence of the said brother. These circumstances are summed up in the petition of the administrator, as above referred to, and show a situation resulting from the invasion of Poland which, since 1939, has rendered impossible any communication to or from a resident of that country.

The brother's silence from 1937 to 1939 does not give rise to any presumption of death because, entirely apart

from the point that the rule ordinarily does not extend to any period short of seven years, the record does not show that there was any occasion for him to have communicated with anyone in this country during that two-year period. Since 1939 his silence is obviously accounted for by the domination of Poland by an alien enemy and the prevailing total war conditions. Under such circumstances, a natural and reasonable explanation of the continued silence of the absentee is supplied which is entirely consistent with his present existence. This renders inapplicable here the presumption of death and imposes upon the appellees the burden of proving facts that would overcome the prevailing presumption of continuance of life. *Robb v. Horsey, supra; Jones on Evidence in Civil Cases,* 4th Ed., Secs. 60, 61; *Mutual Life Ins. Co. v. Louisville Trust Co.,* 207 Ky. 654, 269 S. W. 1014; 25 *C. J. S., Death,* Sec. 5, p. 1053.

As expressed in the last cited authority, the rule is: "One who is shown to be alive at a given time is presumed to remain alive until the contrary is shown by proof or, in the absence of proof, until a different presumption arises." 25 *C. J. S., Death,* Sec. 5, p. 1053. To the same effect is the rule stated in *Jones on Evidence,* 4th Ed., Sec. 60, and quoted in *Robb v. Horsey, supra.*

Inasmuch as the record shows that the absentee brother in the case now before us was living in 1937, the first presumption that arises is that of the continuance of life, and the burden is upon the appellees who seek to overcome it. 25 *C. J. S., Death,* Sec. 6, p. 1057. To meet this burden it must be shown not only that there is an absence or silence for the prescribed period, but also that the absence was from the absentee's home or usual place of residence, and that the silence is unexplainable except on the theory of death. The reason for the presumption is that it has been found necessary, on grounds of public policy, that rights depending on the life or death of persons long absent and unaccounted for, should not remain in abeyance indefinitely but should be settled

according to some fixed rule. *Jones on Evidence,* 4th Ed., Sec. 61; *Robb v. Horsey,* 169 Md. 227, 181 A. 348; *Steen v. Modern Woodmen of America,* 296 Ill. 104, 129 N. E. 546, 17 *A. L. R.* 406; *Ledger v. Northwestern Mutual Life Ins. Co.,* 258 Mich. 26, 241 N. W. 803.

The facts and circumstances of the instant case not only do not support the legal presumption of death of the absentee brother, but on the contrary clearly negative its applicability here. · The record shows that he returned to his "home" in Poland about 1913 or 1914; and that he exchanged communications with the guardian of, his invalid brother, Adolph, in Baltimore as late as 1937, in one of which he especially inquired about the "status" of his said brother and mentioned the possibility of coming from Poland to this country "to take my brother home." It is not a case here of a person absenting himself from his usual place of. residence and thereby becoming inaccessible to those who would ordinarily be in touch with him, but it is a case where the facts show that the absentee had not changed his place of residence since he went "home" to Poland about 1914, and that he was actually living there when last heard from in 1937.

While the prevailing presumption of continuance of life is not a conclusive one but is subject to be controlled by the facts of the case, there are no facts in the record before us sufficient to shift the burden of proof from the parties invoking the presumption of death. 25 *C. J. S., Death,* Sec. 6, p. 1057; *Butler v. Mutual Life Ins. Co. of New York,* 225 N. Y. 197, 121 N. E. 758; *Potter v. Prudential Ins. Co.,* 108 Conn. 271, 142 A. 891. As the appellees have not met this burden of proof, it follows that the Orphans' Court was not justified in disallowing the claim of the brother in their favor, and the order appealed from must, therefore, be reversed.

Apparently to meet just such a situation as has arisen in this case, where an administrator has a present duty to distribute but is uncertain as to the identity of those

entitled to the estate, the General Assembly of Maryland in 1941 enacted a law (Chapter 726) which indicates the procedure to be followed in making distribution. This Act provides for the setting up by the Register of Wills of Baltimore City and the counties of an account of all funds remaining in the hands of an administrator or other fiduciary under the jurisdiction of the Orphans' Court, and which are not susceptible of distribution by said administrator. It is provided that the payment of such funds to a register of wills, under this statute, would constitute a complete distribution of said funds insofar as the administration thereof is concerned, provided that the depositing of any monies to said account shall not be permitted until the court "shall be satisfied that diligent and reasonable effort has been made to distribute, or that, for proper cause shown, said monies cannot be distributed to the parties believed to be entitled thereto." The Act further prescribes that deposits so made into the registry of the Orphans' Court shall remain until such time as they are claimed by the person or persons legally entitled thereto, as shown by a petition setting forth the merits of the claim; also, that upon the expiration of a period of seven years from the date of the said deposit, and no claimant or claimants having appeared and made claim therefor within such time, the funds shall be applied for the use of the public schools.

In the case now before us it is clear that the administrator has made diligent and reasonable efforts to distribute and has shown "proper cause" for not being able to do so "to the parties believed to be entitled thereto." This brings the case directly within the purview and operation of the statute in question. In accordance therewith the administrator is authorized to pay the funds of this estate to the Register of Wills of Baltimore City to be held in this special account until, in due course, "they are claimed by the person or persons legally entitled thereto." By adopting this procedure the interests of all parties concerned will be fully protected.

In reversing the order awarding this estate to the appellees at this time, the cause will be remanded to the Orphans' Court for further proceedings in accordance with the views expressed in this opinion.

*Order reversed and cause remanded, the costs to be paid out of the estate.*