CADLE COMPANY *v.* ROBERT ERRATO ET AL.
(AC 20268)

Foti, Dranginis and Hennessy, Js.

Argued November 30, 2001—officially released August 6, 2002

*Thomas G. Benneche,* for the appellant (named defendant).

*Paul N. Gilmore,* with whom, on the brief, were *Bruce J. Gelston* and *Patrick M. Birney,* for the appellee (plaintiff).

*Opinion*

DRANGINIS, J. In this action involving a default on a promissory note, the defendant Robert Errato[1] appeals from the judgment of the trial court, following a trial to the court, in favor of the plaintiff, Cadle Company. On appeal, the defendant claims that the trial court improperly (1) concluded that the plaintiff was a holder in due course of the promissory note when (a) the copy of the promissory note presented at trial should have been excluded under the best evidence rule and as impermissible hearsay evidence and (b) the plaintiff failed to produce at trial the original promissory note, (2) concluded that the plaintiff's action was not time barred by the applicable statute of limitations and (3) admitted into evidence a document under the business

---

[1] The plaintiff originally filed this action against Robert Errato and his joint obligor on the promissory note, Paul Denz. Denz entered into a stipulated judgment with the plaintiff regarding the present matter and thus is not involved in this appeal. We refer in this opinion to Errato as the defendant.

record exception to the hearsay rule. We affirm the judgment of the trial court.

The trial court found the following facts. On May 17, 1991, the defendant and Paul Denz, his then business partner, executed a commercial promissory note in favor of the Bank of New Haven (bank) in the amount of $93,000 on demand, with monthly payments of principal and interest at a rate of 9.5 percent per annum. The defendant and Denz subsequently defaulted on their payments on the promissory note.

The bank demanded payment on the note, and on December 13, 1991, the defendant and Denz met with Joanne Miller, a loan officer at the bank.[2] At the meeting, in order to meet their financial obligation to the bank, the defendant and Denz proposed payments of $500 per month on the principal with no payments of interest. The bank accepted the proposal in a letter dated March 23, 1992, in which it stated that the monthly payments were to begin on April 10, 1992. Although there was no written modification of the original note, the parties intended for this agreement to provide temporary relief to the defendant and Denz until their financial condition improved.

The bank received a check for $500 from Denz on April 1, 1992. Denz attached a letter to the check stating his intent to send a check for that sum each month to reduce the principal of the $93,000 debt owed. A copy of that letter was sent to the defendant. Denz sent another check for $1000 to the bank in June, 1992, credited on July 30, 1992, which reduced the principal to $91,500.

[2] In its memorandum of decision, the court states that the meeting occurred on December 31, 1992. After the trial court rendered judgment, the defendant filed a motion to reargue. Responding to the motion to reargue, the court noted that the date of December 31, 1992, was a typographical error, and that the correct date of the meeting with Miller was December 13, 1991.

On September 15, 1994, the plaintiff entered into a loan and sale agreement with the bank for the purchase of its loans. The bank assigned its rights to the promissory note executed by the defendant and Denz to the plaintiff. On March 2, 1998, the plaintiff instituted this action as a holder in due course. Following a trial to the court, the court rendered judgment in favor of the plaintiff in the amount of $91,500 plus interest.[3] This appeal followed. Additional facts will be set forth where pertinent to the issues raised.

I

The defendant first claims that the trial court improperly denied his motion for judgment of dismissal at the close of the plaintiff's case because the plaintiff failed to prove prima facie that it was a holder in due course of the promissory note at issue. Specifically, the defendant contends that because the plaintiff presented only a copy of the note at trial and failed to produce the original note, it could not demonstrate that it possessed, and thus was a holder of, the promissory note. We are not persuaded.

The following additional facts are pertinent to our resolution of this claim. During its direct examination of Miller, the plaintiff introduced into evidence a copy of the note. The defendant objected to its admission under the best evidence rule and claimed that to bring an action on the note, the plaintiff must produce the original note. The plaintiff informed the court that the

---

[3] On the day before the defendant's trial for this matter, Denz entered into a stipulation with the plaintiff. Denz was indebted to the plaintiff regarding three promissory notes, including the note at issue here. The stipulation provided that with respect to the note at issue here, "judgment shall enter in favor of the plaintiff in the principal amount of $91,500 in damages, $1955 in attorneys fees, $243.20 in costs, and prejudgment interest of $48,997.74. . . . Judgment as to [all three notes] shall be considered satisfied if the defendant pays the plaintiff the principal sum of $50,000, plus postjudgment interest at the rate of 9 [percent] per year . . . ."

original was attached to the complaint and was held at their main office in Ohio. In response, the court concluded that so long as the plaintiff could establish that the note "was made in the regular course of business and it was the practice [of the plaintiff] to make it at or about the time I think under the statute it would become admissible even though it's a copy."

The plaintiff then ascertained from Miller that the note was produced in the regular course of business and that it was the bank's practice to create such documents. The defendant then objected to the admission of the note on hearsay grounds. The trial court overruled the defendant's objections, stating that the objection "goes to the weight, not the admissibility," and permitted the copy of the note to be admitted into evidence.

Later in the trial, the plaintiff called Nicholas Valorie, an account manager for the plaintiff, to testify as to the plaintiff's ownership of the note. When the plaintiff introduced into evidence a copy of the purchase and sale agreement between itself and the bank during Valorie's testimony, the defendant objected to the admission of the copy on the grounds of the best evidence rule and because it failed to meet the business record exception to the hearsay rule. The trial court overruled the objections.

At the close of the plaintiff's case, the defendant moved for a judgment of dismissal based on the plaintiff's failure to establish a prima facie case. The defendant moved for a judgment of dismissal because "[t]he plaintiff has failed to introduce the original note being sued on, has failed to introduce competent evidence as to what is, but the principle basis of the motion, Your Honor, is they do not have the debt instrument actually referenced in the complaint and being sued on today. . . . [T]hey failed to carry their burden of proof as to

their holder [in] due course status. They don't have the document. They are suing basically on a purchase and sale agreement. That's not a negotiable instrument. That's no proof of debt. That's proof that maybe [the plaintiff] purchased this loan, but it's not proof that they are a holder of this note."

The trial court denied the defendant's motion. In denying the motion, the court stated that for purposes of the motion it was required to view the evidence in the light most favorable to the plaintiff. The court concluded, on the basis of the reasonable inferences drawn from the evidence, that the plaintiff established that it was a holder in due course of the promissory note.

The defendant now contends that the court improperly denied his motion for judgment of dismissal because the plaintiff failed to present the original note at trial and thus could not establish a prima facie case that it was a holder of the note. In raising this issue, however, the defendant invokes an underlying evidentiary claim. Specifically, the defendant maintains that the trial court improperly admitted the copy of the note in the first place because the copy failed to satisfy the best evidence rule or to qualify under the business record exception to the hearsay rule pursuant to General Statutes § 52-180. We, therefore, will first address this evidentiary claim as it pertains to the admissibility of the note.

### A

We review the trial court's evidentiary rulings under an abuse of discretion standard. *State* v. *Pearl*, 28 Conn. App. 521, 535, 613 A.2d 304 (1992). "As defined by our Supreme Court, the best evidence rule requires a party to produce an original writing, *if it is available*, when the terms of that writing are material and must be proved. *Brookfield* v. *Candlewood Shores Estates, Inc.*, 201 Conn. 1, 10, 513 A.2d 1218 (1986); see also B.

Holden & J. Daly, Connecticut Evidence (1988) § 82 (a). The basic premise justifying the rule is the central position which the written word occupies in the law. *Brookfield* v. *Candlewood Shores Estates, Inc.*, supra, quoting C. McCormick, Evidence (1984) § 230; see also *Coelm* v. *Imperato*, 23 Conn. App. 146, 150, 579 A.2d 573 (1990); *Morales* v. *Saint Francis Hospital & Medical Center*, 9 Conn. App. 379, 382, 519 A.2d 86 (1986), cert. dismissed, 202 Conn. 807, 520 A.2d 1287 (1987)." (Emphasis in original; internal quotation marks omitted.) *O'Sullivan* v. *DelPonte*, 27 Conn. App. 377, 384–85, 606 A.2d 43 (1992). The best evidence rule is a preferential, rather than an exclusionary rule. *Brookfield* v. *Candlewood Shores Estates, Inc.*, supra, 12. Under the particular circumstances of this case, we, however, conclude that the copies were properly admitted into evidence regardless of the best evidence rule.

Despite the defendant's objection to the introduction of the copy, the defendant offered no evidence that the copy was not accurate, nor, in fact, did he dispute the contents of the copy. See *O'Sullivan* v. *Delponte*, supra, 27 Conn. App. 385; *Guaranty Bank & Trust Co.* v. *Dowling*, 4 Conn. App. 376, 381–82, 494 A.2d 1216, cert. denied, 197 Conn. 808, 499 A.2d 58 (1985). In response to the plaintiff's complaint, the defendant admitted that he had executed a promissory note in favor of the bank and that the contents of the document spoke "for itself." More significantly, the defendant actually testified that he and Denz had signed a promissory note payable to the bank on May 17, 1991, in the amount of $93,000.[4]

---

[4] During trial, the defendant questioned the accuracy of the copy solely because he felt that the signature on the document did not look like his own. The court then asked to see the defendant's driver's license to compare signatures. The court found the two signatures to be the same.

Moreover, in "an action with respect to an instrument, the authenticity of, an authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. . . . In the absence of such specific denial the signature stands admitted, and is not in issue." (Citation omitted; internal quotation marks omitted.) *Cadle Co.* v. *Ginsburg*, 51 Conn. App. 392, 406, 721 A.2d 1246 (1998), cert. denied, 247 Conn. 963, 724 A.2d 1125

This is the exact information contained in the copy of the note. "[W]here the terms of a document are not in actual dispute, it is inconvenient and pedantic to insist on the production of the instrument itself." (Internal quotation marks omitted.) *Farr* v. *Zoning Board of Appeals*, 139 Conn. 577, 582, 95 A.2d 792 (1953). The court, therefore, properly concluded that the copy of the promissory note was admissible.

We apply the same rationale with respect to the admission into evidence of the copy of the loan and sale agreement between the bank and the plaintiff. Again, the defendant failed to proffer any evidence demonstrating that the copy of the loan and sale agreement was inaccurate, nor did he present any evidence indicating that the bank did not enter into such an agreement with the plaintiff. Moreover, both Miller and Valorie testified that the bank and the plaintiff entered into such an agreement. We, accordingly, conclude that the court properly admitted into evidence the copy of the loan and sale agreement. While it would have been preferable for the plaintiff to have presented the original note and loan and sale agreement, under certain circumstances, such as the situation before us, where the authenticity of the copy is not challenged, the terms are conceded to, or are uncontradicted, and the defendant has not presented any evidence blemishing the copy's reliability, a party can properly proffer the copy. See id., 582–83; *Guaranty Bank & Trust Co.* v. *Dowling*, supra, 4 Conn. App. 382.

---

(1999); see General Statutes § 42a-3-308 (a). In its complaint, the plaintiff attached a copy of the promissory note. The defendant, in his answer, admitted that he had executed the promissory note in favor of the bank and stated that he neither admits nor denies the remaining allegations in the complaint as the "document speaks for itself." Pursuant to § 42a-3-308 (a), the defendant's response constitutes an admission that he signed the promissory note.

The defendant additionally argues that the court improperly admitted the copies of the note and loan and sale agreement in violation of the business record exception to the hearsay rule. The business record exception to the hearsay rule does not apply to the introduction into evidence of a promissory note being sued on and also to contracts, such as the loan and sale agreement here. See 2 C. McCormick, Evidence (5th Ed. 1999) § 249, p. 100 ("[w]hen a suit is brought for breach of a written contract, no one would think to object that a writing offered as evidence of the contract is hearsay"). Given that the defendant did not properly invoke the business record exception to the hearsay rule, we conclude that this claim is without merit. Accordingly, the trial court properly admitted into evidence the copies of the note and the loan and sale agreement in accordance with the best evidence rule.

## B

After concluding that the trial court properly admitted into evidence the copy of the promissory note, we now turn to the issue of whether the presentation of the copy sufficiently proved the plaintiff's status as a holder in due course. The defendant raises this claim as an appeal from the trial court's denial of his motion for a judgment of dismissal, and we will accordingly first set forth the appropriate standard of review.

Practice Book § 15-8 provides that upon a defendant's motion, a trial court may dismiss a plaintiff's cause of action for failure to establish a prima facie case following the plaintiff's presentation of evidence. "A prima facie case, in the sense in which that term is relevant to this case, is one sufficient to raise an issue to go to the trier of fact. 9 J. Wigmore, [Evidence (4th Ed. 1974)] § 2494, p. 379. In order to establish a prima facie case, the proponent must submit evidence which, if credited,

is sufficient to establish the fact or facts which it is adduced to prove. . . . In evaluating [the denial of] a motion to dismiss, [t]he evidence offered by the plaintiff is to be taken as true and interpreted in the light most favorable to [the plaintiff], and every reasonable inference is to be drawn in [the plaintiff's] favor." (Citations omitted; internal quotation marks omitted.) *Thomas* v. *West Haven*, 249 Conn. 385, 392, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000). Whether the plaintiff has established a prima facie case is a question of law, over which our review is plenary. *Middletown Associates* v. *Family Dollar Stores, Inc.*, 47 Conn. App. 723, 726, 706 A.2d 1376 (1998).

In correlation with our inquiry, we must also decide whether the trial court properly found that the plaintiff presented sufficient evidence to establish a prima facie case. See *Loiseau* v. *Board of Tax Review*, 46 Conn. App. 338, 342, 699 A.2d 265 (1997). The trial court's determination that the plaintiff is a holder in due course is a finding of fact, which we review under a clearly erroneous standard. *SKW Real Estate Ltd. Partnership* v. *Gallicchio*, 49 Conn. App. 563, 569, 716 A.2d 903, cert. denied, 247 Conn. 926, 719 A.2d 1169 (1998). "A finding is clearly erroneous when, even though the finding is supported by some evidence, the reviewing court, on the basis of all the evidence, is left with the definite and firm conviction that a mistake has been committed by the fact finder." (Internal quotation marks omitted.) *Cadle Co.* v. *Ginsburg*, 51 Conn. App. 392, 397, 721 A.2d 1246 (1998), cert. denied, 247 Conn. 963, 724 A.2d 1125 (1999).

"To prevail in an action to enforce a negotiable instrument, the plaintiff must be a holder of the instrument or a nonholder with the rights of a holder. See General Statutes § 42a-3-301; *Donnelly* v. *Garvan*, 111 Conn. 626, 629, 151 A. 168 (1930)." *Ninth RMA Partners, L.P.*

v. *Krass*, 57 Conn. App. 1, 6, 746 A.2d 826, cert. denied, 253 Conn. 918, 755 A.2d 215 (2000). Only a holder in due course may enforce a negotiable instrument. *Cadle Co.* v. *Ginsburg*, supra, 51 Conn. App. 396. Pursuant to General Statutes § 42a-3-301, a " '[p]erson entitled to enforce' an instrument [such as a promissory note] means . . . the *holder* of the instrument . . . ." (Emphasis added.)

General Statutes § 42a-3-302 (a) provides in relevant part that a " 'holder in due course' means the holder of an instrument if . . . (2) The holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in section 42a-3-306, and (vi) without notice that any party has a defense or claim in recoupment described in section 42a-3-305 (a)." Moreover, General Statutes § 42a-1-201 (20) defines the term *holder*, with respect to a negotiable instrument, as meaning "the person in *possession* if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession. . . ." (Emphasis added.)

As a general rule, "[t]he possession by the bearer of a note indorsed in blank imports prima facie that he acquired the note in good faith for value and in the course of business, before maturity and without notice of any circumstances impeaching its validity. The production of the note establishes his case prima facie against the makers and he may rest there." (Internal quotation marks omitted.) *SKW Real Estate Ltd. Partnership* v. *Gallicchio*, supra, 49 Conn. App. 571. Therefore, to establish a prima facie case, the plaintiff was

required to demonstrate that it possessed the note, and further that it satisfied the elements of a holder in due course. Id.

The defendant, in essence, contends that because the plaintiff presented only a copy of the promissory note, and not the original, it could not prove the possession element and thus failed to establish a prima facie case that it was a holder in due course of the note. Therefore, the defendant argues that the plaintiff was not entitled to enforce the note and to receive payment. We conclude that although the plaintiff presented only a copy of the note, under the circumstances of this case, the failure to present the original did not preclude a finding that the plaintiff was a holder in due course of the note and thus the plaintiff met the requirements for a prima facie case.

In addition to introducing a copy of the note at trial, the plaintiff also presented Valorie, an account manager for the plaintiff, as a witness to testify about the plaintiff's possession of the note. Valorie testified that the plaintiff purchased the promissory note from the bank in a loan and sale agreement in 1994. To support this statement, the plaintiff introduced into evidence a copy of the loan and sale agreement between itself and the bank. Valorie provided that the plaintiff was the owner and possessor of the note and that the plaintiff was engaged in the business of purchasing promissory notes. Further, Valorie stated that had the plaintiff assigned the note to another party, he would have been informed about that transaction. During her testimony, Miller also revealed that the bank had sold the note to the plaintiff.

Significantly, the defendant failed to present any evidence demonstrating that the plaintiff was not in possession of the note or casting any doubt on the plaintiff's status as a holder in due course. Moreover, it is worth

reiterating that the defendant does not challenge, or contradict, the terms contained in the copy of the note presented before the trial court. Rather, during trial, the defendant conceded to all of the terms that the copy established.

"[T]he trial court is free to accept or reject, in whole or in part, the evidence presented by any witness, having the opportunity to observe the witnesses and gauge their credibility. . . . This court defers to the trial court's discretion in matters of determining credibility and the weight to be given to a witness' testimony." (Citation omitted; internal quotation marks omitted.) *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 878, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001).

After thoroughly reviewing the record and transcript, we cannot conclude that the trial court's finding that the plaintiff was a holder in due course of the note was clearly erroneous. Despite the absence of the original note, sufficient evidence existed, through the copy of the note presented, the testimony of Valorie and a copy of the loan and sale agreement with the bank, to support a finding that the plaintiff possessed the note. On the basis of the evidence presented at trial, it is difficult to draw any other inference from the facts. See *SKW Real Estate Ltd. Partnership* v. *Gallicchio*, supra, 49 Conn. App. 570–71. Moreover, our conclusion here is further buttressed by the fact that at the conclusion of the trial, the plaintiff filed a motion to open the evidence to introduce the original note.[5]

We further note, in support of our conclusion, that this court has held on previous occasions that the production of a photocopy of a note, rather than the original, may suffice to establish a plaintiff's status as a holder in due course. In *Cadle Co.* v. *Ginsburg,* supra,

[5] The trial court denied the motion, and the plaintiff does not now challenge that decision on appeal.

51 Conn. App. 392, the plaintiff produced only a copy of the promissory note. While we did not directly address the exact issue now pending before this court, we affirmed the trial court's finding that the plaintiff was indeed a holder in due course of the promissory note being sued on, despite the fact that the plaintiff produced only a copy of the note at trial. Id., 406–407.

We, therefore, conclude that the court properly determined as a matter of law that the plaintiff established a prima facie case that it was a holder in due course of the note.

## II

The defendant next contends that the court improperly concluded that this action was not time barred by the applicable statute of limitations, as set forth in General Statutes §§ 42a-3-118[6] and 52-576 (a).[7] Specifically, the defendant contends that the court's finding that he acknowledged the debt after the bank demanded payment, thereby tolling the statute of limitations, was clearly erroneous. We are not persuaded.

As stated previously, pursuant to General Statutes § 42a-3-118 (b), "if demand for payment is made to the maker of a note payable on demand, an action to enforce the obligation of a party to pay the note must be commenced within six years after the demand. . . ." The defendant argues that because the bank demanded payment of the debt on December 13, 1991, and the plaintiff did not bring this action until March 11, 1998,

---

[6] General Statutes § 42a-3-118, entitled "Statute of Limitations," provides in relevant part: "(b) Except as provided in subsection (d) or (e), if demand for payment is made to the maker of a note payable on demand, an action to enforce the obligation of a party to pay the note must be commenced within six years after the demand. . . ."

[7] Pursuant to General Statutes § 52-576 (a), "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues, except as provided in subsection (b) of this section."

this case is time barred by the applicable six year statute of limitations as set forth in §§ 42a-3-118 (b) and 52-576 (a). Further, the defendant claims that his actions in this case did not constitute an acknowledgment of the debt and therefore did not toll the six year statute of limitations.

"The Statute of Limitations creates a defense to an action. It does not erase the debt. Hence, the defense can be lost by an unequivocal acknowledgment of the debt, such as a new promise, an unqualified recognition of the debt, or a payment on account. . . . Whether partial payment constitutes unequivocal acknowledgment of the whole debt from which an unconditional promise to pay can be implied thereby tolling the statute of limitations is a question for the trier of fact. . . . As with other questions of fact, unless the determination by the trial court is clearly erroneous, it must stand." (Citations omitted; internal quotation marks omitted.) *Zapolsky* v. *Sacks*, 191 Conn. 194, 198, 464 A.2d 30 (1983).

"A general acknowledgment of an indebtedness may be sufficient to remove the bar of the statute. The governing principle is this: The determination of whether a sufficient acknowledgment has been made depends upon proof that the defendant has by an express or implied recognition of the debt voluntarily renounced the protection of the statute. . . . But an implication of a promise to pay cannot arise if it appears that although the debt was directly acknowledged, this acknowledgment was accompanied by expressions which showed that the defendant did not intend to pay it, and did not intend to deprive himself of the right to rely on the Statute of Limitations." (Citations omitted.) *Dwyer* v. *Harris*, 128 Conn. 397, 400, 23 A.2d 147 (1941). "[A] general acknowledgment may be inferred from acquiescence as well as from silence, as where the existence of the debt has been asserted in the debtor's

presence and he did not contradict the assertion." *Potter* v. *Prudential Ins. Co.*, 108 Conn. 271, 281, 142 A. 891 (1928).

Relevant to our analysis of the issue raised here, we further note that where there are joint obligors on a promissory note, the partial payment, or acknowledgment, of the debt by one joint debtor will not necessarily toll the running of the statute of limitations with respect to the other joint debtor. *Apuzzo* v. *Hoer*, 125 Conn. 196, 202–203, 4 A.2d 424 (1939). "The mere fact that one knows that another, also obligated to pay the debt, has made payments upon it, without his authorizing, consenting to, or participating in such payments, is not a sufficient basis upon which to base such a recognition [of debt]." *Broadway Bank & Trust Co.* v. *Longley*, 116 Conn. 557, 563–64, 165 A. 800 (1933).

In its memorandum of decision, the court found that "[b]oth defendants were involved in the financial arrangement and the payments made to the Bank of New Haven, and thus the statute of limitations was tolled as to both defendants." Accordingly, to resolve this issue, we must determine whether the court's finding that the defendant's own actions constituted an acknowledgment of the debt, thereby tolling the statute of limitations, was clearly erroneous.

We review the trial court's finding here under a clearly erroneous standard. As set forth in part I of this opinion, "[a] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method

by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." (Internal quotation marks omitted.) *Giulietti* v. *Giulietti*, supra, 65 Conn. App. 837.

We note that "[w]here there is conflicting evidence . . . we do not retry the facts or pass upon the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine. . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony and, therefore, is free to accept or reject, in whole or in part, the testimony offered by either party." (Citations omitted; internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Pizza Connection, Inc.*, 55 Conn. App. 488, 498, 740 A.2d 408 (1999).

Miller testified that she met with both the defendant and Denz after they defaulted on the note. Miller stated that during the meeting, which occurred on December 13, 1991, "[the defendant and Denz] said that they did not have the cash flow to make the payments and asked that we reduce the payment amount. . . . I don't actually recall what their request was, but we agreed to five hundred dollars per month which would be applied to principal. . . . They [also] asked that it [the principal amount of the note] be reduced to fifteen thousand dollars, and we declined." The plaintiff also introduced into evidence, as exhibit two, a letter written by the bank, dated March 23, 1992, to the defendant and Denz confirming its acceptance of their proposal of payments of $500 per month. The letter was written to and addressed to both the defendant and Denz.[8] Moreover,

---

[8] The letter written by Miller to the defendant and Denz provides in relevant part:

"Dear Paul [Denz] and Robert [Errato]:

"The Bank of New Haven has considered your proposal on the above referenced loan.

"Due to the reduced cash flow on the property and your overall financial condition, your proposal has been accepted. Payments of $500.00 per month

the plaintiff entered into evidence the letter that accompanied Denz's April 1, 1992 payment of $500 to the bank. At the bottom of that letter, Denz referenced the defendant and also sent a copy of the letter to the defendant. Evidence was also submitted demonstrating that Denz made additional payments through the summer of 1992. Thus, the underlying action was commenced in the spring of 1998, within a six year period from the summer of 1992.

The defendant contends that the bank, through Miller, demanded full payment of the note at the December 13, 1991 meeting. He argues, however, that he never authorized any payments toward the debt, nor did Denz make any payments on the defendant's behalf. Therefore, the defendant claims, Denz's actions had no effect on the tolling of the statute of limitations with respect to his own interests, and thus the plaintiff's suit is time barred.

In support of his argument that the trial court's finding was clearly erroneous, the defendant relies on his testimony that he never negotiated with Miller about making arrangements to repay the note and that he was not involved with, nor did he have knowledge of, Denz's subsequent payments. The defendant also refers to Denz's testimony at trial that they had parted ways and that Denz negotiated with the bank only on his behalf.

After carefully reviewing the record and transcripts in this matter, we conclude that the court's finding that the defendant was "involved in the financial arrangement and the payments made to the bank," thereby tolling the statute of limitations, was not clearly errone-

---

will be applied to principal.

"Please forward your payment to me in the enclosed envelope by April 10th. You will be billed monthly thereafter for the $500.00. If you have any questions, please call me at . . . . "

ous. Sufficient evidence exists in the record to support the trial court's determination that the defendant acknowledged the debt and consented to Denz's subsequent payments on the note, thereby tolling the statute of limitations. In particular, the letter from the bank to the defendant and Denz, dated March 23, 1992, demonstrates the defendant's recognition of the debt and his participation in satisfying the amounts owed. At the time the defendant received the letter, he did not contradict or deny its content.

As stated previously, "a general acknowledgment may be inferred from acquiescence as well as from silence, as where the existence of the debt has been asserted in the debtor's presence and he did not contradict the assertion." *Potter* v. *Prudential Ins. Co.*, supra, 108 Conn. 281. Under the circumstances of this case, we cannot conclude that the trial court's finding that the defendant was "involved in the financial arrangement and the payments made to the bank," thereby tolling the statute of limitations, was clearly erroneous. Accordingly, the defendant cannot prevail on this claim.

### III

The defendant finally claims that the court improperly admitted into evidence, as exhibit three, an internal memorandum, dated January 11, 1993, written by Miller documenting that the defendant and Denz "recently requested a $15,000 release" because the memorandum did not meet the criteria to satisfy the business record exception to the hearsay rule. Specifically, the defendant contends that Miller's memorandum, written in 1993, constituted inadmissible hearsay because it referred to events that occurred in March, 1992, and therefore failed to meet the contemporaneous requirement of the business record exception to the hearsay rule.

"To admit evidence under the business record exception to the hearsay rule, a trial court judge must find that the record satisfies each of the three conditions set forth in General Statutes § 52-180. The court must determine, before concluding that it is admissible, that the record was made in the regular course of business, that it was in the regular course of such business to make such a record, and that it was made at the time of the act described in the report, or within a reasonable time thereafter. . . . To qualify a document as a business record, the party offering the evidence must present a witness who testifies that these three requirements have been met. . . . Section 52-180 is to be liberally construed, and our review is limited to determining whether the trial court abused its discretion in admitting the challenged evidence." (Citations omitted; internal quotation marks omitted.) *Ninth RMA Partners, L.P.* v. *Krass*, supra, 57 Conn. App. 9.

"It is a fundamental rule of appellate procedure in the review of evidential rulings, whether resulting in the admission or exclusion of evidence, that an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." (Internal quotation marks omitted.) *State* v. *Tinsley*, 59 Conn. App. 4, 10, 755 A.2d 368, cert. denied, 254 Conn. 938, 761 A.2d 765 (2000). "We have often stated that before a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . When determining that issue in a civil case, the standard to be used is whether the erroneous ruling would likely affect the result." (Internal quotation marks omitted.) *Ormsby* v. *Frankel*, 54 Conn. App. 98, 108, 734 A.2d 575 (1999), aff'd, 255 Conn. 670, 768 A.2d 441 (2001). Moreover, "[i]t is well recognized that any error in the admission of evidence does not require reversal of the resulting judgment if the improperly

admitted evidence is merely cumulative of other validly admitted testimony." (Internal quotation marks omitted.) *Ludington* v. *Sayers*, 64 Conn. App. 768, 778, 778 A.2d 262 (2001).

Assuming arguendo that the trial court improperly admitted this document into evidence, we conclude that the defendant, nonetheless, cannot satisfy his burden of demonstrating harm. The information contained in the memorandum was not dispositive of any of the issues before the trial court. Its admission did not affect the result of this case, nor does it appear that the court particularly relied on the memorandum in arriving at its decision.[9] The statement about whether the defendant and Denz requested a $15,000 release on their debt was merely cumulative of pertinent evidence already before the court regarding their execution of the promissory note with the bank and their acknowledgment of their debt after default. Moreover, the defendant fails to specifically demonstrate how the admission of this memorandum prejudiced the results of this trial. We, accordingly, conclude that if any error occurred, it was of a harmless nature, and thus the defendant cannot prevail on this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] Although in its memorandum of decision the trial court lists Miller's document as part of the evidence presented, the court did not appear to further depend on, or refer to, the information contained therein in arriving at its determination.